Celia E. WYZIK, Plaintiff,

v.

The EMPLOYEE BENEFIT PLAN OF CRANE COMPANY, Steven R. Frey, Plan Administrator, Defendant.

Civ. A. No. 79–0044–F.

United States District Court, D. Massachusetts.

May 1, 1981.

---

Joel Pentlarge, Quabog Legal Assistance, Ware, Mass., for plaintiff.

Hamilton Doherty, Jr., Bulkley, Richardson & Gelinas, Springfield, Mass., for defendant.

FREEDMAN, District Judge.

This action arises under the Employee Retirement Income Security Act of 1974, P.L. 93–406, (ERISA), presently codified in 29 U.S.C. §§ 1001–1381, over which the District Court has jurisdiction pursuant to 29 U.S.C. § 1132(f). The matter is before the Court today for *de novo* review of the Magistrate's recommendation that summary judgment be entered for the plaintiff. 28 U.S.C. § 636(b)(1)(C).

### I.

At the time of his death, plaintiff's husband Edward Wyzik had been employed by the Crane Company for 34 years and was a participant in its pension plan, as negotiated by Crane Company and Local 278, International Union of Electrical Workers, AFL–CIO. Under the terms of that plan, he would have been eligible for early retirement at age 62, and for normal retirement at age 65. He in fact died on December 27, 1977, ten months before his 62nd birthday.

The plaintiff thereafter made application for survivor's benefits from the Crane Plan. The plan declined to provide such benefits, essentially because Edward Wyzik was not eligible for retirement benefits at the time of his death, and because he was no longer an employee of Crane Company at the earliest time that he would have been eligible for retirement benefits (i. e. upon attaining age 62). The parties appear to agree that this is a correct interpretation of the Crane Plan, which makes no explicit provision for the situation where an employee whose interests are vested dies before he is eligible to claim either early or normal retirement. They disagree over whether the Crane Plan, as interpreted, comports with the controlling provisions of ERISA.

Upon denial of her claim for survivor's benefits, plaintiff brought this action alleging violation of § 205(a) of ERISA, 29 U.S.C. § 1055(a), which provides:

> If a pension plan provides for the payment of benefits in the form of an annuity, such plan shall provide for the payment of annuity benefits in a form having the effect of a qualified joint and survivor annuity.

The defendant agrees that 29 U.S.C. § 1055(a) obligates the Crane Plan to provide for payment of benefits in the form of a joint and survivor annuity to eligible employees and their spouses, and observes that the plan does make such provision. Plan, Art. III; Art. IV. However, the defendant goes on to argue that 29 U.S.C. § 1055(a) is not applicable on the facts of this case, where Edward Wyzik was never eligible to claim retirement benefits in the form of a joint and survivor annuity in his own right, and where the plaintiff was never independently eligible to claim survivor benefits.

The defendant thereupon moved for dismissal of the complaint pursuant to F.R. Civ.P. 12(b)(6). That motion was referred to the Magistrate, who initially recommended that the motion be treated as one for summary judgment because no facts were in dispute.[1]

The Magistrate then recommended that summary judgment be entered for the plaintiff. He reasoned that provisions of 29 U.S.C. § 1055(b) relied upon by defendant

---

1. While the Court does have authority to convert a Rule 12(b)(6) motion into a Rule 56 motion under certain circumstances, *see* F.R. Civ.P. 12(b), I am not persuaded that such action is appropriate in this case. However, the question need not be resolved here, in light of my ultimate disposition of this case.

to define eligibility for benefits in fact merely set a time frame for payment of benefits to which the plaintiff was entitled by virtue of § 1055(a). In the alternative, the Magistrate reasoned that Edward Wyzik had actually attained retirement age because he would have been eligible for disability retirement if, at the time of his death, he had instead become permanently and totally disabled. Defendant made seasonable objection to the Magistrate's recommendation.

## II.

In considering a motion to dismiss, the Court accepts as true all material allegations of the complaint. *O'Brien v. DiGrazia,* 544 F.2d 543, 545 (1st Cir. 1976) *cert. denied* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). The Court then looks to see whether the plaintiff is entitled to relief under any set of facts which could be proved in support of the claims alleged in the complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

While the plaintiff relies upon 29 U.S.C. § 1055(a) to establish her right to receive benefits from the Crane Plan, it is clear from the outset that § 1055(a) goes only to the plan's obligation to provide for payment of benefits in the specified form. The eligibility of any individual to receive benefits in that form must be established by reference to other provisions of § 1055.

## A.

The plaintiff argues, and the Magistrate concurs, that § 1055(b) does in fact establish plaintiff's eligibility to receive benefits in the form prescribed by § 1055(a). Section 1055(b) provides:

> In the case of a plan which provides for the payment of benefits before the normal retirement age as defined in section 3(24) [29 U.S.C. § 1002(24)], the plan is *not required to provide for the payment of annuity benefits in a form having the effect of a qualified joint and survivor annuity during the period beginning on the date on which the employee enters into the plan as a participant and ending on the later of—*
> (1) the date the employee reaches the earliest retirement age, or
> (2) the first day of the 120th month beginning before the date on which the employee reaches normal retirement age.

(emphasis added).

The plaintiff reasons that the emphasized language represents a time schedule on which benefits are to be paid. According to this interpretation, the Crane Plan would not have had to provide benefits for the ten months succeeding Edward Wyzik's death, but the plaintiff would then have become eligible for survivor's benefits as of the date on which her late husband would have attained age 62. Recognizing that the language of § 1055(b) is somewhat ambiguous, the plaintiff has sought to bolster this interpretation by reference to the legislative history of ERISA. She relies particularly upon House Report No. 93–807, wherein the House Ways and Means Committee addressed H.R. 12855, a precursor of the final ERISA legislation.

That Committee report in part discusses the rationale for requiring payment of benefits "in a form having the effect of a qualified joint and survivor annuity." For example, it notes:

> Qualified plans in the future that provide annuities are to provide for them as joint and survivor annuities (if the participant and his spouse have been married throughout the 5-year period ending on the annuity starting date) unless the employee elects out of such treatment.

[1974] U.S.Code Cong. & Ad.News 4639, 4674. By reference to this and similar language appearing elsewhere in the Report, the plaintiff seeks to establish that Congress intended § 1055 to be interpreted so as to secure her right to collect survivor's benefits from and after the date her late husband would have attained age 62.

The plaintiff overstates the significance of this aspect of the legislative history in two ways. I first note that H.R. 12855, the bill analyzed in House Report No. 93–807,

became part of Title II of ERISA. Title II imposes requirements upon pension plans which desire to secure the important tax advantages and benefits of a "qualified" plan. The passages from House Report No. 93–807 identified by plaintiff refer to provisions that eventually became Sec. 1021(a)(1) of Title II of ERISA, and are now codified at 26 U.S.C. § 401(a)(11). As part of the Internal Revenue Code, the relevance of 26 U.S.C. § 401(a)(11) to plaintiff's claim is by no means self-evident.[2]

Plaintiff's claim arises under 29 U.S.C. § 1055, which was added by Sec. 205 of Title I of ERISA. Title I was developed from H.R. 2, a bill first considered by the House Education and Labor Committee. That Committee, in House Report No. 93–533, discussed H.R. 2 without specific reference to the language that later became § 1055.

While the questionable relevance of the language in House Report No. 93–807 is itself a strong argument against reliance thereon in this case, I would in any event be concerned about the scope of that language. Similar language admittedly is found in the House Conference Committee Report on what finally became P.L. 93–406 [ERISA], House Report No. 93–1280. *See* [1974] U.S. Code Cong. & Ad.News 4639, 5060. There, the Conference Committee stated:

Under the conference substitute, when a plan provides for a retirement benefit in the form of an annuity, and the participant has been married for the one-year period ending on the annuity starting date, the plan must provide for joint and survivor annuity.

However, even accepting that this language is intended to explain 29 U.S.C. § 1055, it is clear from the context that the Committee analysis goes only to § 1055(a), or in the alternative 26 U.S.C. § 401(a)(11)(A). There is nothing in the Reports that directly addresses the impact of § 1055(b) on the requirements of § 1055(a).

### B.

The alternate interpretation of § 1055(b), advanced by the defendant, is that if the plan is not required to provide benefits at the time of the employee's death, it cannot be compelled to do so subsequently. In this view, § 1055(b) defines basic eligibility for benefits. The plaintiff has conceded that the wording of § 1055 may support such a result, but naturally argues that the legislative history favors her interpretation.

I agree with the parties that the ambiguities of § 1055(b) do compel reference to legislative history. While the legislative history adduced by plaintiff does not directly support her interpretation, neither does it explicitly preclude such an interpretation. However, I have identified another aspect of the legislative history of H.R. 2 that provides compelling support for the defendant's interpretation of § 1055(b).

The precise question raised in this case could have been resolved by an amendment to H.R. 2 offered by Rep. Holtzman (D.N.Y.) on February 28, 1974. 120 Cong. Rec. 4723 (1974). That amendment would have ensured the availability of pension benefits (including survivor's benefits) from and after "the earliest age at which [the employee] acquired any non-forfeitable rights." *Id.* Edward Wyzik had attained such an age.

Rep. Holtzman considered her amendment as an important addition to H.R. 2, noting:

I believe that many of my colleagues have the impression that under the pending bill, once a worker's benefits have vested, his wife will be provided for in the event that he predeceases her.

Such is not the case. Behind the technical language of the bill is a provision which permits pension plans to prevent a widow from receiving survivor's benefits unless her husband dies after he has

---

2. I note in passing that plaintiff strongly criticizes the defendant's attempt to use Treasury regulations promulgated under 26 U.S.C. § 401(a)(11) to buttress its defense against plaintiff's 29 U.S.C. § 1055 claim. *See* Plain-

tiff's Memorandum and Opposition to Defendant's Motion to Dismiss, p. 10. In light of plaintiff's own use of § 401(a)(11)'s legislative history, this criticism is misplaced.

reached his retirement age. This means that a man who has worked for a company for 15 or 20 years, and whose pension benefits have become fully vested by the time he reaches the age of 45 or 50, had better remain alive for another 20 or 25 years if he wants his wife to receive her share of those vested benefits.

*Id.* at 4724.

Rep. Holtzman went on to criticize the results that would follow if H.R. 2 was not amended:

This [situation] is unconscionable, particularly because it is not apparent from the language of either the bill or the report which is supposed to explain the bill. I am afraid that it will be misleading to employees who will be lulled into a false sense of security in the belief that once their pension rights are vested, their wife will be secure regardless of what happens to them.

The problem here is that even though we have a worker who has fully vested rights in the plan, he has to live to a certain age to insure that his wife will be able to receive any benefits. I think the committee recognized the problem of the surviving spouse in general, but not in this specific instance.

*Id.*

The amendment immediately encountered opposition. Rep. Erlenborn criticized the proposal:

. . . because what this does, it converts the pension system into an insurance system that would be double, triple, or quadruple the costs of operating a private pension plan. If we did this by law for those already operating plans, it would double, triple or quadruple their costs. We would probably bankrupt the plan.

*Id.* He added, however, that "if a company wants to offer an insurance option, that is fine, which many do; they know what the cost is." *Id.*

Rep. Dent echoed these concerns about the cost of implementing the amendment, observing that the objectives sought by Rep. Holtzman (and the plaintiff here) had only received brief consideration by the Education and Labor Committee:

The discussion resolved around setting some kind of assurance that there would be payment of survival benefits. We established a base which set a date for survival before being made available at the earliest retirement age. Anything but that would give such an enormous cost that we could in many cases completely destroy the pension fund, because if one is to be given survivor benefits at any part of his vesting period, which is what the amendment does, there is no way that one can accumulate funds in a retirement pension fund without having a definite number of years to be completed.

*Id.* at 4725.

Rep. Ullman likewise noted that the cost to plans from Rep. Holtzman's amendment outweighed the benefits:

These are private and voluntary pension programs. If we impose this kind of requirement, all we are going to do is put a lot of private pension programs out of business. This would cost more than they could afford. What we have tried to do is establish a balance, bring up the minimum pension requirements to the full extent possible without jeopardizing the existence of the private pension program and without discouraging the establishment of additional pension programs. If we impose the kind of high costs involved in this and on the private pension system, we will only discourage the development of further private pension programs and put a lot of existing ones out of business.

*Id.* After this debate, the amendment was defeated.

Reading § 1055(b) together with these passages from the floor debate, it becomes clear that if an employee dies before the later of the two dates specified in § 1055(b)(1) or § 1055(b)(2), then the plan is excused from any further obligation to provide pension or survivor's benefits. *See generally* Lee, "Joint and Survivor Annuities Under ERISA—The Gamble on Survival" 3 Journal of Corporate Taxation 241 (1976). Consequently, where Edward Wy-

zik never became eligible for benefits under § 1055(b), his wife could not subsequently become eligible for such benefits.

I further observe that, to the extent to which interpretations of Title II of ERISA [26 U.S.C. § 401(a)(11)] may be relevant to an understanding of Title I provisions [29 U.S.C. § 1055(b)], the regulations promulgated by the Secretary of the Treasury do support the defendant's contentions.[3] The regulations present the example of an employee who is eligible to retire after 30 years of service. Assuming that the employee begins work at age 18, he is then eligible for retirement at age 48. Normal retirement age is 65. The plan will never be required to make payments in the form of a qualified joint and survivor annuity, because the early retirement age (48) is prior to the later of the two times set out in 26 U.S.C. § 401(a)(11)(B)(i) or (ii) [which in the example would be age 55, or ten years prior to normal retirement]. *See* 26 C.F.R. § 401(a)–11(a)(3), Example 3. Extending this example to the instant case, where Edward Wyzik was no longer employed on the later of the two dates set out in § 1055(b) the Crane Plan was not obligated to make payments in the form of a joint and survivor annuity.

### C.

The plaintiff finally seeks to argue that Edward Wyzik had actually attained "earliest retirement age" within the meaning of § 1055(b)(1) because he would have been eligible for disability retirement at the time of his death, had he instead become permanently and totally disabled. The term "earliest retirement age" is defined as "the earliest date on which, under the plan, the participant could *elect* to receive retirement benefits." 29 U.S.C. § 1055(g)(2) (emphasis added). The Crane Plan sets that date as age 62, with 15 years of continuous service. Crane Plan, Art. I. Moreover, the concepts of elective retirement and retirement due to permanent and total disability appear to be mutually exclusive. Consequently, I cannot

find that Edward Wyzik had attained "earliest retirement age" within the meaning of § 1055(b)(1).

The only other direct provision for payment of survivor's benefits to the widow of an employee still in service at the time of his death is found in 29 U.S.C. § 1055(c). However, these provisions are not applicable until after the later of the two dates specified in § 1055(b). Where an employee dies before attaining early retirement age, § 1055(c) is not triggered.

### *Conclusion*

Upon consideration of the controlling statute, and the related legislative history, it appears that defendant's motion to dismiss must be allowed. This conclusion is supported by the language of 29 U.S.C. § 1055, and confirmed by Congress' explicit rejection of an amendment that would have directly achieved the result sought here by the plaintiff.

On the facts of this case, denial of pension benefits is regrettable. However, any resolution to this type of problem must await future Congressional action, or improvement of individual pension plans through the bargaining process.

---

**3.** The Secretary of Labor has so far failed to promulgate regulations interpreting 29 U.S.C.

§ 1055. *See* 29 C.F.R. §§ 2530.205–2530.206 [Reserved].