William L. O'BRIEN et al.,
Plaintiffs, Appellants,

v.

Robert J. DiGRAZIA, Defendant,
Appellee.

No. 76–1292.

United States Court of Appeals,
First Circuit.

Submitted Aug. 30, 1976.
Decided Nov. 8, 1976.

Frank J. McGee, Marshfield, Mass., on brief for appellants.

Lawrence J. Ball, Sp. Asst. Corp. Counsel, Boston, Mass., and Michael DeMarco, counsel to the Police Commissioner, Malden, Mass., on brief for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

■ The district court allowed the defendant's motion to dismiss for failure to state a claim and the plaintiffs appealed. Fed.R.Civ.Pro. 12(b)(6). Given this posture of the case, we accept as true all material allegations in the complaint. *Robinson v. Stanley Home Prods. Co.*, 272 F.2d 601 (1st Cir. 1959); 2A Moore's Federal Practice ¶ 12.08 (1975). Those facts may be simply stated. The plaintiffs are patrolmen in the Boston Police Department; the defendant is the Police Commissioner. In 1973, the Commissioner ordered the plaintiffs to complete a financial questionnaire, listing all sources of income in 1972 for themselves and their spouses, all significant assets held by them and any members of their households, and, for the years 1966 through 1971, a general estimate of their expenditures and copies of their state and federal income tax returns.[1] The plaintiffs refused to supply this information. The Commissioner held a hearing and suspended them without pay for thirty days. The patrolmen now seek damages, an injunction, and declaratory relief. The gist of their claim is that these events violated "the constitutional and civil rights of the plaintiffs". They refer specifically to the Fourth, Fifth, Seventh, and Fourteenth Amendments, and to the "right of privacy".

■ In evaluating this complaint, the district court relied on one further fact, that the Commissioner demanded this financial information only after he was given cause to suspect the patrolmen's integrity; their names were apparently found on a list in the possession of a man known to be involved in organized crime. While the reasons behind the Commissioner's order are relevant, the court erred in considering them, for they are not set out in the complaint, and this was a motion to dismiss for failure to state a claim.[2] *See Costen v. Pauline's Sportswear, Inc.*, 391 F.2d 81, 85 n. 5 (9th Cir. 1968); *Erlich v. Glasner*, 374 F.2d 681 (9th Cir. 1967). But the court's decision should not be set aside if its dismissal of the case can be justified without reference to the Commissioner's reasons. *Cf. O'Brien v. Moriarty*, 489 F.2d 941 (1st Cir. 1974).

The plaintiffs attack the financial questionnaire as an invasion of their privacy. In appealing to a broad constitutional "right of privacy", the plaintiffs seek a shelter of more limited parameters than the commodious label suggests. The Supreme Court in its occasions to deal with the concept of privacy has seemed to refer to autonomy. *See, e. g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Henkin, *Privacy and Autonomy*, 74 Colum.L.Rev. 1410 (1974). And even autonomy has been protected only within a limited sphere: "matters relating to marriage, procreation, contraception, family relationships and child rearing and education." *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). *See also Kelley v. Johnson*, 425 U.S. 1440, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); *Williams v. Kleppe*, 539 F.2d 803 (1st Cir. 1976). Privacy in the sense of freedom to withhold personal financial information from the government

---

1. The questionnaire is attached to, and we treat it as part of, the complaint. *See Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union No. 153*, 221 F.2d 644, 647 (6th Cir. 1955).

2. Undisputed facts outside the complaint may of course be considered if the motion to dismiss is treated as one for summary judgment. 5 Wright & Miller, Federal Practice and Procedure § 1366 (1969). But this route was not followed by the court below, nor was it suggested by the defendants on appeal. *Cf. T. M. T. Trailer Ferry, Inc. v. Union de Tronquistas de Puerto Rico, Local 901*, 453 F.2d 1171 (1st Cir. 1971).

or the public has received little constitutional protection. *See, e. g., Fritz v. Gorton,* 83 Wash.2d 275, 517 P.2d 911 (1974) (rejecting an elected official's attack on forced financial disclosure), *appeal dismissed,* 417 U.S. 902, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). *But cf. California Bankers Ass'n v. Shultz,* 416 U.S. 21, 78–79, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974) (Powell, J., concurring); *City of Carmel-by-the-Sea v. Young,* 2 Cal.3d 259, 85 Cal.Rptr. 1, 466 P.2d 225 (1970).

■ This is not to say that there is no constitutional right to guard one's secrets. But the officers in the instant case do not claim that their financial affairs will be broadcast to the public, or even to other government agencies.[3] There is little doubt that the Internal Revenue Service acted constitutionally in demanding the information supplied on the plaintiffs' tax returns. And society's interest in an honest police force is as strong as its interest in a self-reporting tax system.[4] Assuming for argument's sake that this sort of privacy deserves a special constitutional solicitude, the interests on the Commissioner's side outbalance a patrolman's right to withhold financial information. *Cf. Kelley v. Johnson,* 425 U.S. 1440, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); *Williams v. Kleppe, supra,* 539 F.2d at 803.

■ Freedom from disclosure is also protected by more specific guarantees of the constitution. But these plaintiffs do not claim that disclosure is being used to punish or deter their exercise of other constitutional rights. *Cf. NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Shelton v. Tucker,* 364 U.S. 479, 81

S.Ct. 247, 5 L.Ed.2d 231 (1960). And even if the Fourth Amendment applies to this sort of intrusion, the Commissioner's order is not so lacking in justification as to be an "unreasonable" invasion of the patrolmen's "legitimate expectation of privacy". *See United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). *Cf. Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). *See generally* Bogomolny, *The Right to Nondisclosure,* 5 Human Rights 153 (1976). The officers also point to their Fifth Amendment privilege against self-incrimination. This privilege is not infringed when public employees are dismissed for failing to answer questions "specifically, directly, and narrowly relating to the performance of their official duties . . . ." *Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation,* 392 U.S. 280, 284, 88 S.Ct. 1917, 1920, 20 L.Ed.2d 1089 (1968); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). And questions about a policeman's finances are "specifically, directly, and narrowly" related to his job. Even a hint of police corruption endangers respect for the law. In order to establish an officer's probity, it may well be necessary to ask, as this questionnaire does, about several years' income and expenses as well as current assets. Information about other members of the officer's household must also be revealed if the questionnaire is to have meaning.

■ Appellants' second claim is that due process was violated when the Commissioner himself held a hearing to suspend the

3. The Supreme Court has said that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). But when a plaintiff under 42 U.S.C. § 1983 supplies facts to support his claim, we do not think that *Conley* imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional official action into a substantial one. *See Hoitt v. Vitek,* 497 F.2d 598, 600 n. 1 (1st Cir. 1974); *Aubut v. Maine,* 431 F.2d 688 (1st Cir. 1970). We are not holding the pleader to an impossi-

bly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

4. Even in the absence of any basis for suspicion on the part of the Commissioner, a requirement that police officers reveal their finances to the Commissioner serves the public interest in an honest force.

patrolmen for disobeying his order. This, they believe, was an unlawful combination of functions, conducive to bias. Any *per se* rule seems foreclosed by *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), which declared that claims of this sort must overcome a presumption that state administrators are fair and honest: the court must be convinced of a "risk of actual bias". *Id.* at 47, 95 S.Ct. 1456. Appellants argue that *Withrow* does not control here because the Commissioner, rather than investigating conduct before judging it, "performed conduct which he then adjudged". Appellants seem to be advancing an unrealistically compartmentalized view of an administrator's job. *See generally Hortonville Joint School Dist. No. 1 v. Hortonville Education Ass'n*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). Without evidence of bias, the Commissioner can constitutionally enforce his own orders by suspending those who disobey them.

*Affirmed.*