**Annette HEBERT et al., Plaintiffs, Appellants,**

v.

**Joseph VENTETUOLO et al., Defendants, Appellees.**

**No. 80–1209.**

United States Court of Appeals, First Circuit.

Argued Dec. 1, 1980.

Decided Jan. 20, 1981.

Albert R. Romano, Providence, R. I., with whom Gerald C. DeMaria, and Higgins, Cavanagh & Cooney, Providence, R. I., were on brief, for plaintiffs, appellants.

James F. McAleer, Providence, R. I., with whom McAleer & McAleer, and Stephen P. Nugent, Providence, R. I., were on brief, for defendant, appellee, Rhode Island Interscholastic League.

Armando O. Monaco, II, Providence, R. I., with whom Jeremiah S. Jeremiah, Jr., Providence, R. I., was on brief, for defendants, appellees, Joseph Ventetuolo, Principal, etc., et al.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

PER CURIAM.

This case was brought by four Cranston East High School students suspended from their school hockey team. School authorities suspected that the four had obtained guardianships simply to change their legal address and thus to play together on this particular school hockey team. Appellee Ventetuolo, principal of the high school, told the boys that they were suspended from hockey on November 29, 1979, without

giving them reasons or a formal hearing. Contemporaneous press stories reported that the boys were accused of being fraudulently enrolled in school and that they were involved in the most serious recruiting scandal in the state's history. Appellee Rhode Island Interscholastic League decided to rule on the boys' eligibility after a hearing, which was held on December 19, 1979. The next day the League ruled three of the boys eligible to play, but found the fourth—Michael DiSandro—to be ineligible for a 20-week period on the basis of Article II, Section 7 of the League rules.[1]

The plaintiffs brought a "civil rights action ... pursuant to 42 U.S. Code, § 1983–1986, inclusive", seeking damages for deprivation of "rights secured to them under the laws and constitution of the United States, and of the State of Rhode Island ...." The district court granted the appellees' motion for summary judgment, and the four minors appealed.[2]

■ The appellants complain of the district court's treatment of their equal protection and due process claims.[3] Regarding the former, they argue that the district court "failed to address or determine" their claim that suspension based on their status as wards under guardianship could not survive strict scrutiny and thus violated equal protection. But the district court ruled that "obviously ... there [is no] protected class. As a result, the Court concludes that the rational relationship test is appropriate." Appellants never claimed that their guardianships were anything but voluntary.

Neither have they explained to us why—if indeed such is a test—voluntary wards comprise a "discrete and insular minorit[y]" meriting "more searching judicial inquiry." *United States v. Carolene Products Co.*, 304 U.S. 144, 153 n.4, 58 S.Ct. 778, 784 n.4, 82 L.Ed. 1234 (1938). They likewise cite not a single case for the proposition. Therefore we do not disturb the district court's treatment of the appellants' equal protection claims.

■ The appellants' objections to the district court's due process holding warrant similar treatment. Their mischaracterizations of the holdings in *Bishop v. Wood*, 426 U.S. 341, 347–50, 96 S.Ct. 2074, 2078–80, 48 L.Ed.2d 684 (1976) and *Board of Curators v. Horowitz*, 435 U.S. 78, 84–85, 98 S.Ct. 948, 952, 55 L.Ed.2d 124 (1978) do not convince us that the district court erred in finding no infringed liberty interest under *Paul v. Davis*, 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). And appellants' brief does not contain *any* citations to state law that might endow them with a "property" entitlement to play hockey. Consequently their claim that the district court misunderstood the facts of the process they actually received is inapt. Since the court "conclude[d] that under Rhode Island law, there is no property right to play interscholastic sports", they had no constitutional entitlement to any process whatsoever. Thus facts respecting the actual process received are not material to the court's holding. Because, in our opinion, this appeal is so lack-

1. "If a student transfers from one secondary school to another, the student shall be ineligible until a minimum period of 20 calendar weeks (excluding the summer vacation months) have elapsed since the date of registration in the school to which the student transfers, *unless* the transfer is the *direct* result of a change of residence of the athlete's family, in which case the student shall be eligible at once, provided the student's record conforms with the other eligibility requirements of the league." Rhode Island Interscholastic League, *Rules and Regulations* (1979–1980 edition), Art. II, Sec. 7 (emphasis added).

2. The minors subsequently moved to vacate this judgment on the grounds of newly discov-

ered evidence that they claimed expanded their case beyond the factual setting of suspension from the hockey team. The district court denied this motion, and the minors did not appeal this ruling. Consequently our focus here is limited to the hockey suspensions.

3. Appellants first assert that the district court erred "in granting relief to a defaulting party". The district court clerk did enter a *notice* of default on the basis of the minors' affidavit. No such *judgment* was ever entered, and it appears that the district court orally granted Rule 55(c) relief when the matter was brought up in chambers. It would have been preferable for the district court to record this action.

ing in substance, we assess double costs and attorney's fees against appellants.

*Affirmed.*