**James M. DiPERRI, et al.,**
**Plaintiffs, Appellants,**

v.

**FEDERAL AVIATION ADMINISTRA-**
**TION, et al., Defendants, Appellees.**

No. 81–1468.

United States Court of Appeals,
First Circuit.

Argued Nov. 2, 1981.

Decided Feb. 19, 1982.

---

James J. Twohig, South Boston, Mass., for plaintiffs, appellants.

Richard J. Lettieri, Boston, Mass., with whom James P. Whitters, III, Martha J. Koster, Dexter L. Kenfield and Gaston Snow & Ely Bartlett, Boston, Mass., were on brief, for appellee Mass. Port Authority.

Gregory C. Flynn, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harring-

ton, U. S. Atty., Boston, Mass., was on brief, for appellee, Federal Aviation Administration.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiffs James M. DiPerri and eight other residents of South Boston appeal from the district court's dismissal of their suit against the Federal Aviation Administration ("FAA") and the Massachusetts Port Authority ("Massport") for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Plaintiffs' complaint alleges that both Massport and the FAA have collaborated for at least the past 15 years, and perhaps the last 22 years, in creating an unreasonable nuisance condition for the citizens of South Boston through the operation of Logan Airport. The complaint asserts that the use of certain runways, aircraft and flight tracks causes severe (but avoidable) noise pollution damage to residents and that aircraft fly at a height of only 300 feet above a large oil tank farm at City Point, thereby causing a great safety hazard for the citizens who live nearby. Plaintiffs seek injunctive relief as well as damages from both defendants.

For the reasons stated by the district court in its opinion, we are satisfied that the complaint failed to make out causes of action either in tort or for constitutional deprivation.[1] We need not repeat what the district court has already properly stated on this score. The only issue which we believe requires further discussion is whether plaintiffs may have stated a claim for injunctive relief against the FAA under the Federal Aviation Act, 49 U.S.C. § 1301 et seq. We turn, then, to that issue.

1. Plaintiffs asserted the National Environmental Policy Act, 42 U.S.C. §§ 4331–32, as a ground of jurisdiction in this case, but they failed to allege any facts relating to a specific "major federal action" which the agency had not made the subject of a required environmental impact statement. The district court, therefore, simply ignored this aspect of the complaint, as, we believe, it was entitled to do. On appeal the plaintiffs have asserted that the dis-trict court had a "general equity jurisdiction" to hear their case even if *no* statutory or constitutional theory supported their claim. However, the lower federal courts are tribunals of *limited* jurisdiction, and they may not generally hear cases unless authorized to do so by Congress. *See generally* Hart & Wechsler, *Federal Courts and the Federal System* 309–418 (2d ed. 1973).

Plaintiffs assert that their complaint states a claim under two relevant provisions of the Federal Aviation Act: 49 U.S.C. § 1348 (authority over flight patterns) and 49 U.S.C. § 1431 (authority over aircraft noise). Since plaintiffs' primary allegations relate to noise rather than safety, we first consider the possibility of a claim under section 1431, which deals expressly with noise abatement.

Section 1431 empowers the Administrator of the FAA, in consultation with certain others, to prescribe "such regulations as the FAA may find necessary to provide for the control and abatement of aircraft noise." 49 U.S.C. § 1431(b)(1). A related statute gives citizens an express right to sue the Administrator "where there is alleged a failure of such Administrator to perform any act or duty under section 1431 of Title 49 which is not discretionary with such Administrator." 42 U.S.C. § 4911(a)(2)(A).

■ But while section 1431 may empower the FAA to promulgate airport noise abatement regulations, the agency has not done so. There are, in fact, so far as we can determine, no *airport* (as opposed to *aircraft*) noise abatement regulations presently in effect pursuant to this authority. The FAA has so far elected to limit its regulation of aircraft noise primarily to noise abatement design criteria for new aircraft.[2] *See, e.g.,* 14 C.F.R. §§ 36 and 91.-301–311. In these regulations, the FAA has been careful to avoid exercising authority over airport noise. The regulations governing noise standards, for example, specifically state that "[n]o determination is made, under this part, that these noise levels are or should be acceptable or unacceptable for operation at, into, or out of, any airport." 14 C.F.R. § 36.5. In the absence of any applicable airport noise regulation, the conduct alleged in the complaint does not support an action against the Administrator under the citizen suit provision in 42 U.S.C. § 4911.

It might, of course, be asserted that the FAA had some kind of "duty" under section 1431 to promulgate airport noise abatement regulations. But no such allegation is anywhere made, and there are limits to the obligation of courts to invent speculative legal theories for plaintiffs. Section 1431, moreover, does not readily lend itself to such a theory. Section 1431 expressly states that the FAA need only adopt such rules *as it deems necessary* to control aircraft noise, and citizens are permitted to sue under 42 U.S.C. § 4911 only for those acts which are *not discretionary* with the Administrator. *See, e.g., Illinois v. Coleman,* 16 Av.Cas. ¶ 17,428 (D.D.C.1981) (granting injunction to Massachusetts, Illinois, and New York to require FAA to expedite review of regulations for new aircraft forwarded to FAA by EPA in accordance with section 1431). The right and duty of a court to compel the Administrator to promulgate noise abatement regulations at Logan Airport would therefore seem problematic. *See Corace v. Butterfield,* 387 F.Supp. 446 (E.D.N.Y.1975) (holding that compelled airport noise abatement rulemaking under section 1431 was foreclosed under both the statute and under mandamus jurisdiction). In any event, plaintiffs' generalized allegations regarding aircraft noise around Logan Airport, together with their prayer for injunctive relief against the FAA, cannot be translated into a maintainable claim under section 1431 of the Federal Aviation Act.

With section 1431 thus an inadequate basis for plaintiffs' noise complaints, there remains only section 1348(c) as a possible predicate for the requested noise injunction. That statute directs the FAA "to prescribe air traffic rules and regulations governing the flight of aircraft, for the navigation, protection, and identification of aircraft, for the protection of persons and property on the ground, and for the efficient utilization

---

**2.** Where aircraft fail to meet these criteria, however, some airport use restrictions may be imposed. *See* 14 C.F.R. § 91.309(b)(2) (civil supersonic airplanes that have not been shown to comply with the stage 2 noise limits of Part 36 not allowed to take off or land between 10 P.M. and 7 A.M. except in emergencies). Plaintiffs do not allege in their complaint, however, that any design criteria have not been met.

of the navigable airspace. . . ." Such rules, according to the statute, are to be promulgated and enforced pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* *See* 49 U.S.C. § 1348(d). Plaintiffs might, therefore, have alleged in their complaint (although they did not, in fact, do so) that they were "aggrieved" parties under 5 U.S.C. § 702 and that the FAA has arbitrarily acted or failed to act under its section 1348 authority to protect "persons and property on the ground." With respect to noise, such a theory could have been tied into existing allegations in the complaint that the FAA could safely and more quietly route most aircraft at Logan over the harbor or the ocean to avoid causing a nuisance to the residents of South Boston.

One difficulty with this theory (putting aside the fact that it was never really articulated to the district court) is that we find little reason to believe that section 1348(c) was designed to protect persons and property against noise. First, the statute appears on its face to be concerned with air and ground *safety* rather than airport noise. There is evidence in the legislative history that air disasters—not environmental concerns—were what motivated Congress to require the FAA to regulate flight patterns. *See* H.R.Rep.No.2360, 85th Cong., 2d Sess., *reprinted in* [1958] U.S.Code Cong. & Ad. News 3741, 3742. Second, as examined above, Congress has subsequently passed specific legislation under a different section of the Federal Aviation Act giving the FAA explicit, discretionary power to control aircraft noise. *See* 49 U.S.C. § 1431. The enactment of this express statute relating specifically to noise abatement suggests that Congress saw section 1431 rather than section 1348 as the vehicle through which the FAA would exercise its discretionary authority in the noise abatement area. Third, where a party sought to compel the FAA to act on a military aircraft noise problem under its section 1348 authority, the Ninth Circuit ruled that the FAA was not required to consider noise in its regulations passed under section 1348—and so no suit would lie to compel the agency to do so. *See Westside Property Owners v. Schlesin-*

*ger*, 597 F.2d 1214, 1221–22 (9th Cir. 1979). The same rationale would apply equally to civilian aircraft as well.

Finally, if any coherent federal policy can be discerned, it is that aircraft noise abatement with respect to particular airports is primarily up to the local proprietor, not the FAA. The district court pointed out that requests for noise abatement relief such as moratoriums on airport expansion, airport curfews, or restrictions on the types of planes allowed to use Logan, have to be addressed to Massport rather than to the FAA. Massport, stated the court, "is the entity authorized to impose reasonable restrictions on which aircraft may use Logan Airport." The cases strongly support the district court's view. The Supreme Court has said that the airport proprietor—not the federal government—is liable for inverse condemnation suits due to overflights, *see Griggs ·v. Allegheny County*, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), and a number of courts have said that local proprietors are also liable for nuisance claims brought by local residents. *E.g., Greater Westchester v. City of Los Angeles*, 26 Cal.3d 86, 160 Cal.Rptr. 733, 603 P.2d 1329 (1979), *cert. denied*, 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980); *Hub Theatres, Inc. v. Massachusetts Port Authority*, 370 Mass. 153, 346 N.E.2d 371, *cert. denied*, 429 U.S. 891, 97 S.Ct. 249, 50 L.Ed.2d 174 (1976) (Massport enjoys limited immunity from nuisance suits brought by property owners, but Massport may not act to cause unreasonable or unnecessary damage to community). In part because of this assignment of liability, most courts have held that airport proprietors have primary responsibility to reduce airport noise. *See Santa Monica Airport Association v. City of Santa Monica*, 659 F.2d 100 (9th Cir. 1981) (airport proprietor has authority to impose flight curfew and aircraft restrictions without preemption by FAA); *British Airways Board v. Port Authority of New York*, 558 F.2d 75 (2d Cir. 1977) (upholding temporary ban on operation of Concorde at New York airport). *But cf. Luedtke v. County of Milwaukee*, 521 F.2d 387, 390–91 (7th Cir. 1975)

(court-ordered regulation of airport operations would violate preemption of federal authority over aircraft noise). The FAA itself has steadfastly maintained that the local proprietor has primary responsibility for the regulation of airport noise. In a 1976 Noise Abatement Policy Statement, the FAA and the Department of Transportation stated that

> [a]irport proprietors are primarily responsible for planning and implementing action designed to reduce the effect of noise on residents of the surrounding area. Such actions include optimal site location, improvements in airport design, noise abatement ground procedures, land acquisition, and restrictions on airport use that do not unjustly discriminate against any user, impede the federal interest in safety and management of the air navigation system, or unreasonably interfere with interstate or foreign commerce.

> .     .     .     .     .     .

> We have been urged to undertake—and have considered carefully and rejected—full and complete federal preemption of the field of aviation noise abatement. In our judgment the control and reduction of airport noise must remain a shared responsibility among airport proprietors, users, and governments.

FAA and DOT Noise Abatement Policy Statement at 5, 18 (Nov. 18, 1976), *quoted in Greater Westchester v. City of Los Angeles*, 160 Cal.Rptr. at 743, 603 P.2d at 1340.

■■■ Were courts ordinarily to recognize noise abatement suits against the FAA under the statutory authority presented in section 1348, this could conflict with the scheme of allocated responsibilities currently endorsed by the FAA and by the courts.[3] Thus we do not believe that a suit for an injunction requiring alteration of FAA flight rules under section 1348, even had it been properly presented to the district court, would be an appropriate means to

accomplish airport noise abatement. Noise complaints must be handled by local proprietors using their available authority to impose curfews, to ban certain aircraft, to negotiate alternative flight patterns acceptable to the FAA, to limit airport expansion, etc.—or, if by the FAA, under its discretionary authority to issue aircraft noise regulations pursuant to section 1431.

So far we have discussed plaintiffs' claims relative to noise, concluding that neither sections 1431 nor 1348 provide a sufficient basis for them. The complaint, however, also included allegations regarding a lack of physical safety in the vicinity of Logan Airport. Aircraft were said to use landing patterns which bring them in only 300 feet above a large oil tank farm at City Point. This was asserted to be a dangerous situation for plaintiffs with homes in the nearby area.

■■■ These allegations raise the question whether a claim is stated by intimations that FAA flight pattern rules are hazardous to plaintiffs' safety on the ground. *See* 49 U.S.C. § 1348(c) (directing FAA Administrator "to prescribe air traffic rules . . . for the protection of persons and property on the ground. . . ."). Courts owe great deference to FAA determinations in an area—such as flight patterns—where the agency has expertise and is the vehicle chosen by Congress to accomplish the regulations. *See* K. Davis, 1 *Administrative Law Treatise* § 5.03–.05 (1958 ed.). For these reasons, courts are exceedingly slow to find an FAA rule or action regarding air flight or aircraft safety to be "arbitrary" or "irrational." *See Virginians For Dulles v. Volpe*, 541 F.2d 442, 447 (4th Cir. 1976) (FAA proprietary rules for National Airport regarding flight curfews, flight scheduling, etc., not violative of Administrative Procedure Act); *Air Line Pilots Association v. Federal Aviation Administration*, 454 F.2d 1052, 1054 (D.C.Cir.1971) (FAA rules

---

**3.** The only section 1348 regulation we have found which appears to be connected with airport noise provides that pilots of certain aircraft must use a "noise abatement" runway if it is assigned to them by Air Traffic Control.

Even under this rule, however, the pilot may request and the Control Tower may grant use of another runway if "the interests of safety" so require. 14 C.F.R. § 91.87(g).

regarding minimum equipment for aircraft not irrational). Nonetheless, the fact that plaintiffs are unlikely to persuade a court to overturn the judgment of the agency is not by itself a basis for a Rule 12(b)(6) dismissal. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (courts should be slow to dismiss claims unless it is clear "beyond doubt" that plaintiff can prove no set of facts in support of his claim). FAA rules governing takeoff and landing flight patterns are, by statute, subject to the limitations of the Administrative Procedure Act. *See* 49 U.S.C. § 1348(d). If a plaintiff can establish that he is a person "aggrieved" within the meaning of the APA, 5 U.S.C. § 702, and that an FAA safety-related rule or action, including an FAA-established flight pattern, is so indefensible as to be "arbitrary" within the meaning of 5 U.S.C. § 706, he might be entitled to relief. Here plaintiffs allege

that the FAA is either requiring or permitting planes to fly dangerously close to a large oil tank farm which is, in turn, close to plaintiffs' residential area. Generously construed, the allegations are sufficient, if barely so, to state a claim of "arbitrary" action by the FAA.[4] Whether, given the FAA's extensive powers in this area, such a claim of arbitrariness can possibly be established is something else again, but we think a Rule 12(b)(6) dismissal as to this one issue is premature.

In conclusion, plaintiffs have alleged enough to state a claim under the Federal Aviation Act relative to the FAA's supposedly unsafe flight pattern which permits or requires planes to fly over the oil tank farm at City Point but have failed to do so relative to any of their noise complaints. The latter must be addressed to Massport.[5]

4. In so ruling, we are not to be understood as condoning plaintiffs' uninformative pleading which, even under liberal notice standards, is on the very margin of what is tolerable. The complaint does not cite to section 1348(c); it does not set forth the legal theory discussed herein; nor, insofar as we are aware, did plaintiffs articulate to the court below the theory we now discuss. While such pleading practices may be acceptable in a simple negligence or contract action, we think that there is a limit to the burden which a party may legitimately place upon a district court to "work out his case for him." 2A Moore's Federal Practice § 8.14 at 8-136 to 137 (citing cases which require pleading of some legal theory to survive a motion to dismiss). This is particularly true where, as here, the plaintiff alleges generalized wrongdoing by a federal agency governed by numerous statutory and regulatory provisions. In such a case, the allegation of a specific legal ground upon which a claim may be based is not a mere technicality which may be dispensed with routinely in the name of "notice" pleading. Rather, in an era of crowded dockets and complex regulatory arrangements, the pleading of a plausible legal theory to ground a complaint such as this has become a necessity if the district court and the opposing party are to have any idea of what a plaintiff is contending. *Cf.* Fed.R.Civ.P. 8(c) (plaintiff must give a "short and plain statement of the claim" showing that the pleader is entitled to relief).

We therefore remand in this case on the single safety claim respecting the oil tank farm with this comment. In the future, when we are faced with a jumble of accusations such as is contained in the present complaint and a total

lack of reference by the plaintiffs—who were in this case represented by counsel—to a single specific statutory or regulatory section, we may well be inclined to uphold a district court dismissal of the complaint under Rule 12(b)(6). Courts cannot be mind readers, and we do not think it is asking too much of a plaintiff to state a specific ground upon which he may be entitled to relief. Where a plaintiff fails to initially articulate his claim with specificity, of course, district courts should be liberal in granting leave to amend so that he may reformulate his claim acceptably. In this way counsel, rather than the court, will be put to the task of researching the legal basis for the plaintiffs' claim. There may, of course, be different considerations in some cases with respect to *pro se* plaintiffs. *See McDonald v. Hall*, 610 F.2d 16 (1st Cir. 1979) (section 1983 case).

5. In its opinion, the district court dismissed the pendent state claims against the two defendants pursuant to its discretionary authority over such matters. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Our conclusion that plaintiffs have narrowly stated a claim with respect to the safety aspects of the City Point flight patterns does not disturb the correctness of that ruling, which we affirm. Given present authority that the local interest in controlling airport noise takes precedence over the federal interest, resolution of noise issues in a state court would continue to be appropriate. *Cf. Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1941) (federal courts may equitably decline jurisdiction to avoid needless friction with state and local policies).

Neither section 1348 nor section 1431 presently support a cause of action by a private plaintiff seeking to compel the FAA to resolve airport noise problems at a local airport.

*Affirmed in part; vacated and remanded in part.*