Ralph BOYNTON, et al., Plaintiffs,

v.

Charles CASEY, et al., Defendants.

Civ. 80–1055–B.

United States District Court,
D. Maine.

July 23, 1982.

Norman S. Heitmann, III, Millinooket, Maine, for plaintiffs.

Richard H. Broderick, Lincoln, Maine, for defendants.

## MEMORANDUM OPINION AND ORDER

CYR, District Judge.

On March 18, 1980, plaintiffs brought this action in which they allege that the defendants, the principal and vice-principal of Mattanawcook Academy and the superin-

tendent and 12 members of the Board of Directors of School Administrative District No. 67, denied due process of law to the student-plaintiff, Daniel Boynton, in connection with his suspension and expulsion from school. Defendants' first, second and third affirmative defenses contend that the complaint fails to state a claim upon which relief can be granted; their fourth affirmative defense is that the action became moot upon Boynton's readmission to school. These defenses are considered motions to dismiss under Fed.R.Civ.P. 12(b)(1) and (6).[1]

## A. Summary of Allegations

Count I alleges that while attending public school at Mattanawcook Academy on December 11, 1979, Daniel Boynton was subjected to questioning by the school principal and vice-principal concerning the use of marijuana on school premises. During the questioning, which lasted more than an hour, Boynton was denied permission to leave and was not informed of "his right not to answer questions and to have his parents present at said questioning." [Count I, ¶ 26.] Boynton admitted using marijuana on school property and was immediately suspended from school. It is further alleged that these actions were undertaken with the intent and result of depriving Boynton of constitutional rights, including the right to due process of law under the Fourteenth Amendment to the Constitution of the United States.

Count II alleges that on or about January 2, 1980 the defendant School Committee met to consider the expulsion of Boynton from Mattanawcook Academy. At that meeting, Boynton and his parents appeared and informed the School Committee of their participation in various "substance abuse" programs since the date of the suspension. At the close of the meeting, the School Committee voted to expel Boynton, without specifically identifying the reason for the expulsion. On January 16, 1980 the School Committee met to reconsider the expulsion. The plaintiffs again appeared and informed the committee of their participation in various substance-abuse programs after December 11, 1979. The School Committee voted to reaffirm the expulsion, again without citing a specific reason. It is alleged that these committee actions were intended to and did in fact violate the constitutional rights of the student-plaintiff.

Count III alleges that the committee actions were "arbitrary, improper and an abuse of the discretion given to the Defendant School Committee" [20 M.R.S.A. § 473(5) (1964) (1975 amendment)] which provided, in pertinent part, that:

> Superintending school committees and school directors shall perform the following duties:
>
> . . . .
>
> 5. *Scholars expelled.* Expel any obstinately disobedient and disorderly scholar, after proper investigation of his behavior, if found necessary for the peace and usefulness of the school; and restore him on satisfactory evidence of his repentance and amendment. The school committee may authorize the principal to suspend students up to a maximum of 10 days for infractions of school rules.

Count IV alleges that on January 31, 1979 [2] the student-plaintiff was placed on school probation, without notice or opportunity to be heard, in violation of his due process rights.

## B. The Suspension (Count I)

Count I alleges that the principal and vice-principal questioned Boynton for an hour in the principal's office, during which

---

1. The Court may dismiss a complaint, provided the plaintiffs are given notice of the proposed action and are afforded an opportunity to address the issue. *Literature, Inc. v. Quinn*, 482 F.2d 372, 374 (1st Cir. 1973). The parties waived oral argument and have addressed the sufficiency of the complaint in their memoranda.

2. In their memorandum in opposition to defendants' motion to dismiss, plaintiffs assert that Boynton was readmitted to school on January 28, 1980. Therefore, it seems clear that plaintiffs intended to allege in their complaint that the probationary period commenced on January 31, 1980.

they (1) denied him permission to leave, (2) failed to advise him of his right to remain silent, (3) failed to notify him he had a right to have his parents present, and (4) failed to notify his parents. The plaintiffs' theory appears to be that by their conduct the school officials denied Boynton the procedural due process to which he is entitled under *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The facts alleged by plaintiffs contradict their contentions. Boynton *was* given prior notice of the alleged infraction and an opportunity to be heard prior to the suspension. Instead, the thrust of the alleged denial of procedural due process seems to be that the *questioning* of Boynton by school officials in a restrictive atmosphere constituted a custodial interrogation which was not preceded by advice of a right to remain silent and to have his parents present.

The asserted right of the student-plaintiff to prior advice of a right to remain silent is predicated on *Caldwell v. Cannady*, 340 F.Supp. 835 (N.D.Tex.1972). The court in *Caldwell*, without citation of authority,

expressed the opinion that the *refusal* of a student *to testify* before a school board concerning an alleged violation of school policy, requiring the expulsion of any student using or selling drugs, cannot be treated as an admission of guilt. *Id.* at 840–41 (dictum). In light of the later decision of the United States Supreme Court in *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the validity of the *Caldwell* dictum appears extremely doubtful.[3]

The due process violation asserted here consists not in the drawing of adverse inferences from any refusal of the student-plaintiff to answer the charges against him, but in the failure of school officials to advise him of an asserted right to remain silent. No authority is cited by the plaintiffs, and the Court can find none, supporting an extension of the *Miranda* rule, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to interrogations conducted by school officials in furtherance of their disciplinary duties.[4]

---

**3.** In *Baxter*, the Supreme Court considered whether the fifth-amendment privilege against self-incrimination "forbids drawing adverse inferences against [a prison] inmate for his failure to testify." *Id.* at 316, 96 S.Ct. at 1557. The Court noted that

the Fifth Amendment 'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' Prison disciplinary hearings are not criminal proceedings; but if inmates are compelled in those proceedings to furnish testimonial evidence that might tend to incriminate them in later criminal proceedings, they must be offered 'whatever immunity is required to supplant the privilege' and may not be required to 'waive such immunity.'

*Id.* at 316, 96 S.Ct. at 1557 (citations omitted). The Court concluded that since there were no *criminal* proceedings pending against the prisoner, since silence *in and of itself* is insufficient to support an adverse disciplinary decision against an inmate under Rhode Island law, and since the prisoner was forewarned that his silence could be used against him, Rhode Island's prison disciplinary hearing procedures were

not violative of the fifth amendment. *Id.* at 317–18, 96 S.Ct. at 1557–58.

Our conclusion is consistent with the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them—the Amendment 'does not preclude the inference where the privilege is claimed by a *party to a civil cause.*'

*Id.* at 318, 96 S.Ct. at 1558 (*emphasis original*) [quoting from 8 J. Wigmore, *Evidence* 439 (McNaughten rev. 1961)]. The *Baxter* rule that an adverse inference may be drawn from the silence of an inmate in a prison disciplinary proceeding has been applied to a school disciplinary hearing. *Morale v. Grigel*, 422 F.Supp. 988, 1003 (D.N.H.1976).

At the time of the infraction mere possession of a usable amount of marijuana was no longer a criminal offense in Maine, but a civil violation subject to a forfeiture of up to $200. 22 M.R. S.A. § 2383 (amended 1975, c. 499, § 51; effective May 1, 1976). Therefore, the questioning of Boynton concerning his use of marijuana was not in the nature of official inquiry where "answers might incriminate him in future criminal proceedings," *see Baxter*, 425 U.S. at 316, 96 S.Ct. at 1557.

**4.** The prophylactic rule in *Miranda* is inapplicable in the context of private interrogations, *United States v. Parr-Pla*, 549 .F.2d 660, 663

■ Plaintiffs further allege that Boynton was "denied permission to leave" during the questioning, apparently intimating that the length (and perhaps other unalleged circumstances) of the questioning transformed it into a custodial interrogation. No authority is cited by plaintiffs and the only cases the Court has found on the point are to the contrary. *See In re Brendan*, 82 Misc.2d 1077, 372 N.Y.S.2d 473 (1975); *People v. Shipp*, 96 Ill.App.2d 364, 239 N.E.2d 296 (1966).

■ The third alleged impropriety in connection with the pre-suspension questioning is the failure to notify Boynton and his parents of a right to have the parents present during questioning. Plaintiffs cite no authority sustaining any such constitutional right and the Court has discovered none.

■ Absent special circumstances, such as where the student endangers the school or threatens academic disruption, *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), requires that a school suspension of 10 days or less be preceded by notice of the charges and by an opportunity to be heard. *Id.* at 581, 95 S.Ct. at 739. The complaint alleges no lack of notice or opportunity to be heard. On the contrary, it appears from the pleadings that Boynton was notified of the alleged infraction and that he met with school officials for an hour. There is no allegation that Boynton did not understand the charges against him, or that he was coerced into an admission, or that he was not fully heard.

Plaintiffs argue that there were no special circumstances, such as threatened academic disruption, which would justify immediate suspension. But the complaint does not allege his immediate removal *without notice or opportunity to be heard*; rather it alleges that the suspension was imposed *following the questioning and admissions*. The Supreme Court held, in *Goss*, that:

> There need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.

419 U.S. at 582, 95 S.Ct. at 740. The plaintiffs seem to suggest that school officials may not question a student in order to obtain an admission of misconduct and immediately suspend the student on the basis of the admission. *Goss* does not support this proposition and no other authority has been cited by plaintiffs or discovered by the Court.

## C. The Expulsion Hearings (Counts II & III)

■ Count II of the complaint deals with the expulsion from school following School Committee meetings held on January 2 and January 16, 1980 at which plaintiffs informed the School Committee of their participation in substance-abuse programs fol-

(9th Cir. 1977), and does not require the suppression in probation revocation proceedings of statements previously obtained by probation officers. *United States v. MacKenzie*, 601 F.2d 221, 222 (5th Cir. 1979) (per curiam); *United States v. Johnson*, 455 F.2d 932 (5th Cir.), *cert. denied*, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972).

In *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Supreme Court noted that

[n]either *Miranda* [*v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)], nor *Mathis* [*v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968)], has any sub-

stantial bearing on the question whether counsel must be provided at '[p]rison disciplinary hearings [which] are not part of a criminal prosecution.' *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The Court has never held, and we decline to do so now, that the requirements of those cases must be met to render pretrial statements admissible in other than criminal cases.

425 U.S. at 315, 96 S.Ct. at 1557. The Court thus expressed its reluctance to impose a *Miranda*-based exclusionary rule in non-criminal proceedings.

lowing the December 11, 1979 school suspension. Plaintiffs allege that the school expulsion violated the student-plaintiff's "constitutional rights" by reason of the failure of the School Committee to assign reasons for the expulsion.[5] No other procedural deficiency is alleged.

Although plaintiffs do not identify the "constitutional right" allegedly implicated, they appear to challenge the expulsion decision as a denial of substantive due process. *See Wood v. Strickland*, 420 U.S. 308, 322–326, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975); *McCluskey v. Board of Education*, 662 F.2d 1263 (8th Cir. 1981), *rev'd per curiam* —— U.S. ——, 102 S.Ct. 3469, 73 L.Ed.2d 1273 (1982); *Petrey v. Flaugher,* 505 F.Supp. 1087 (E.D.Ky.1981). *Wood v. Strickland* involved student challenges of school expulsions for violations of a regulation prohibiting the use or possession of intoxicating beverages during school activities. The Eighth Circuit held that the evidence produced at the school board disciplinary hearing was insufficient, rendering the expulsions violative of substantive due process. 485 F.2d 186, 190 (8th Cir. 1973). The United States Supreme Court declined to determine whether the "sufficiency of the evidence" due process rationale, applicable in *criminal* proceedings, *see, e.g., Vachon v. New Hampshire,* 414 U.S. 478, 480, 94 S.Ct. 664, 665, 38 L.Ed.2d 666 (1974); *Thompson v. City of Louisville,* 362 U.S. 199, 206, 80 S.Ct. 624, 629, 4 L.Ed.2d 654 (1960), should be applied in the context of school disciplinary proceedings. 420 U.S. at 323, 95 S.Ct. at 1001. Instead, the Court rejected the Eighth Circuit interpretation of the relevant school regulation and concluded: "When the regulation is construed to prohibit the use or possession of beverages containing alcohol, there was no absence of evidence before the school board to prove the charge against respondents." *Id.* at 325, 95 S.Ct. at 1002. The Court further commented:

> It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

*Id.* at 326, 95 S.Ct. at 1003 [6] (citations omitted).

Some courts have examined the *severity* of school board sanctions on substantive due process grounds. *See Lee v. Macon County Board of Education,* 490 F.2d 458, 460 n.3 (5th Cir. 1974); *Petrey v. Flaugher,* 505 F.Supp. 1087 (E.D.Ky.1981);[7] *Mitchell v.*

---

**5.** There is no intimation in the pleadings or elsewhere in the present record that the student-plaintiff was charged with or suspected of any *other* conduct which may have formed the basis for his expulsion.

**6.** The Supreme Court recently reaffirmed this position in a per curiam decision rejecting another Eighth Circuit attempt to overrule a school board interpretation of its own regulations. *Bd. of Educ. of Rogers, Arkansas v. McCluskey,* · U.S. ···, 102 S.Ct. 3469, 73 L.Ed.2d 1273 (1982), *rev'g. per curiam,* 662 F.2d 1263 (8th Cir. 1981).

**7.** In *Petrey v. Flaugher, supra,* the district court articulated the following substantive due process principles for application in school cases:

1. A substantive due process or Ninth Amendment right, not expressly found in the text of the Constitution, must be one that is fundamental, able to be recognized as such by reference to the teachings of history and the basic values that underlie our society. Such historical reference is necessary because of the need for an objective standard, so that judges may not elevate their purely personal, political and social views to constitutional dignity merely by labelling them 'fundamental.'

2. After, but only after, a right has been identified as fundamental in the light of history and tradition, the law regulating it is subjected to strict scrutiny by the court, to determine if the regulation is justified by a suffi-

*Board of Trustees,* 625 F.2d 660 (5th Cir. 1980).

The complaint alleges that the School Committee, at its January 2 and January 16, 1980 meetings, considered the alleged infraction after receiving input from the plaintiffs. The complaint does not allege, much less provide a factual basis for alleging, that the procedure followed in reaching the expulsion decision was inadequate on either occasion, or that there was any lack of evidence of the infraction, or that the punishment was too severe. The crux of the plaintiffs' objections to the expulsion of the student-plaintiff until January 28, 1980 appears to be that the School Committee did so despite information that plaintiffs had participated in substance-abuse programs following the December 11, 1979 infraction. Plaintiffs seem to suggest that this information conclusively established "satisfactory evidence of [Boynton's] repentence (sic) and amendment," entitling him to immediate reinstatement under 20 M.R.S.A. § 473(5).

It is unclear whether Count III is intended as a further specification of the alleged substantive due process violation or as a pendant state-law claim.[8] Assuming that it is the former, it is necessary to examine the statute. *See Wood v. Strickland,* 420 U.S. 308, 322–26, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975).

Section 473, 20 M.R.S.A. § 473 (Supp. 1980), provides in pertinent part:

> Superintending school committees and school directors shall perform the following duties:
>
> . . . .
>
> Expel any obstinately disobedient and disorderly scholar, after proper investigation of his behavior, if found necessary for the peace and usefulness of the school; and restore him on satisfactory evidence of his repentance and amendment. . . .

The plaintiffs claim that the school expulsion was imposed on January 2 and continued in effect by committee action on January 16, notwithstanding "satisfactory evidence of . . . repentance and amendment." There is nothing in the statute (or elsewhere) that would *require* that a school committee deem participation in a substance-abuse program "satisfactory evidence of . . . repentance and amendment."[9] Although Count III contends that the committee action was "arbitrary", the factual

---

cient, but not necessarily compelling, state interest.

3. Students do not shed their constitutional rights, including those of substantive and procedural due process, at the schoolhouse gate.

4. However, the prerogative of managing the public schools belongs to the states and the boards of education and administrators to whom the state has delegated it. The federal courts have the power to supersede their decisions only where their actions are clearly unconstitutional.

505 F.Supp. at 1090 (footnotes omitted). The court went on to hold that the expulsion of a student for the remainder of the school year for smoking marijuana in school was not unconstitutional. *Id.* at 1091 (citations omitted).

The vindication by the Supreme Court (in dictum) of a public high school student's substantive due process rights in *Wood v. Strickland,* 420 U.S. at 326, 95 S.Ct. at 1001, cited *Tinker v. DesMoines Indep. Community School Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), a case involving a student's *freedom of expression,* and *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178,

87 L.Ed. 1628 (1943), a case involving a student's *freedom of religion.*

8. Count III charges that the committee action was "arbitrary, improper and an abuse of the discretion given to the Defendant School Committee and members by [20 M.R.S.A. § 473(5) ]."

9. The plaintiffs also argue that the requirements of 20 M.R.S.A. § 473(5) (as amended in 1975) were not met because defendants failed to establish that the expulsion was "necessary for the peace and usefulness of the school." [Memorandum of Nov. 12, 1981, at 3.] Plaintiffs thereby invite the Court to consider whether the December 11, 1979 infraction was an adequate basis upon which the School Committee might determine that the expulsion of the student-plaintiff on January 2, 1980 was "necessary for the peace and usefulness of the school." The Court must decline to engage in "corrections of errors in the exercise of . . . discretion which do not rise to the level of violations of specific constitutional guarantees." *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).

allegations of the complaint do not indicate arbitrary action.

The plaintiffs would have the Court reconsider the evidence in order to determine whether the committee abused its discretion. In *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), a school regulation prohibiting use or possession of "intoxicating beverages" was construed by the school board to mean beverages having *any* alcoholic content, whereas the Eighth Circuit Court of Appeals construed the term as synonymous with "intoxicating liquor," i.e., beverages with over 5% alcoholic content, under Arkansas statutes. 420 U.S. at 324–25, 95 S.Ct. at 999–1000. The Supreme Court concluded that "the Court of Appeals was ill-advised to supplant the interpretation of the regulation of those officers who adopted it and are entrusted with its enforcement." *Id.* at 325, 95 S.Ct. at 1000. Although section 473 is not a regulation "adopted" by the School Committee, the committee is entrusted by the State of Maine with its enforcement, and the caution urged upon the federal courts in the *Wood* case and recently reiterated in *Board of Education of Rogers, Arkansas v. McCluskey*, ___ U.S. ___, 102 S.Ct. 3469, 73 L.Ed.2d 1273 (1982), that "§ 1983 does not extend the right to relitigate in federal court *evidentiary questions* arising in school disciplinary proceedings," 420 U.S. at 326, 95 S.Ct. at 1001 (*emphasis added*), deserves particular attention in the present litigation where the complaint invites the Court to do precisely that.

D.  *The "School Probation" Decision*

■ Count IV alleges a due-process violation arising out of the action by school officials in placing the student-plaintiff on "school probation" following the termination of the expulsion order on January 31, 1980. Plaintiffs appear to contend that the student-plaintiff was thereby deprived of a property interest protected by the due process clause of the fourteenth amendment. *See Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Protected property interests do not derive from the due process clause itself, but must be predi-

cated on "existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). As the First Circuit has stated:

> In deciding whether an interest in a government benefit rises to the level of protected property, the Supreme Court has us look to the reasonable expectations of those who receive the benefit. 'It is a purpose of the ancient institution of property,' the Court has written, 'to protect those claims upon which people rely in their daily lives.'

*Rose v. Nashua Board of Education*, 679 F.2d 279 at 282 (1st Cir. 1982), *quoting Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

■ Although it is clear that the entitlement to an education is a property interest protected by the due process clause of the fourteenth amendment, *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975), that interest does not necessarily encompass every facet of the educational program. *See Rose v. Nashua Board of Education, supra*, [guarantee of free transportation to school creates no constitutionally protected interest in "suspension-free" bus service]; *Herbert v. Ventetuolo*, 638 F.2d 5, 6 (1st Cir. 1981) [no property right to participate in interscholastic athletics]; *Walsh v. Louisiana High School Athletic Ass'n.*, 616 F.2d 152, 159 (5th Cir. 1980) [student interest in participation in interscholastic athletics amounts to mere expectation]. *But cf. Davis v. Central Dauphin School District School Board*, 466 F.Supp. 1259, 1263–64 (M.D.Pa.1979) [whether school athletic policies create a student property right to participate in interscholastic athletics poses substantial federal question].

The complaint fails to allege what property right or liberty interest is implicated by the school probation imposed in this case, or even to identify the consequences of "school probation" so as to enable the Court to divine for itself any such right or interest

which *might* be implicated. Furthermore, the school probation imposed in this case was clearly alleviative of the more severe sanctions of suspension and expulsion previously imposed. Absent allegations sufficient to subject the earlier committee actions to judicial scrutiny, the readmission of the student-plaintiff to school on a probationary basis cannot be considered constitutionally suspect. *Cf. Petrey v. Flaugher*, 505 F.Supp. 1087 (E.D.Ky.1981) [*expulsion for balance of school year, for marijuana use, not unconstitutionally severe*].

### E. *Standards for Dismissal of Complaint*

Were these plaintiffs appearing *pro se*, it would be particularly important to construe their complaint liberally for the purpose of determining whether it alleges a cause of action upon which relief can be granted. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *McDonald v. Hall*, 610 F.2d 16 (1st Cir. 1979). But where plaintiffs are represented by counsel it is important to bear in mind that

> [w]hile a complaint need only set out 'a generalized statement of facts,' there must be enough information to outline the elements of the pleaders' claim.' More detail is required than a plaintiff's bald statement 'that he has a valid claim of some type,' and courts do 'not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened . . . .'

*Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir. 1977), *quoting* Wright & Miller, *Federal Practice and Procedure*: Civil § 1357 at 597 (1969). "Complaints based on civil rights statutes must do more than state simple conclusions; they must at least outline the facts constituting the alleged violation." *Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir. 1979). Finally, in commenting on the general rule that a complaint is sufficient "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), the First Circuit has noted that

> when a plaintiff under 42 U.S.C. § 1983 supplies facts to support his claim, we do not think that *Conley* imposes a duty on the courts to conjure up unpleaded facts that might turn a frivolous claim of unconstitutional official action into a substantial one . . . [W]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976).

Applying these general principles, it appears that Count I fails to allege even "rudimentary facts to support the essential claim," *Kadar Corp. v. Milbury*, 549 F.2d at 235–36, that the suspension did not comport with the procedural due process requirements of *Goss v. Lopez, supra*. On the contrary, the alleged facts demonstrate that the student-plaintiff was notified of the infraction and given an opportunity to present his version of the facts prior to the suspension. The apparent invitation to construe *Goss* as prohibiting any questioning of a student by school officials in the furtherance of their disciplinary duties, absent *Miranda*-type warnings or parental consultation, is without judicial or legislative foundation, and in direct contravention of the recognition in *Goss* that suspension "hearings" may consist of an "informal give-and-take between student and disciplinarian," 419 U.S. at 584, 95 S.Ct. at 741.

It is significant that the plaintiffs do not assert that the student-plaintiff did not commit the alleged infraction. *Goss* recognized that the interest at stake in a student-suspension hearing is that of avoiding "unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences." *Id.* at 579, 95 S.Ct. at 738. Given the failure to allege innocence, a fact which, if alleged, would "clearly dominate the case," *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976), the Court will not presume the presence of unfairness or mistake sufficient to constitute a cause of action under section 1983.

Counts II and III present conclusory allegations of "arbitrary" and "improper" action by the School Committee in expelling the student-plaintiff for about 17 school days notwithstanding "satisfactory evidence of repentance and amendment," [20 M.R.S.A. § 473(5) (1964)] consisting of plaintiffs' representations of participation in various substance-abuse programs after the admitted infraction. The committee action is vaguely claimed violative of the "civil" and "constitutional rights" of the student-plaintiff. The Court can discern no legal theory supportive of plaintiffs' claim. The facts alleged by plaintiffs belie their contention that the expulsion hearings, at which plaintiffs were allowed to present their case, were *procedurally* deficient. If their complaint was intended to advance a substantive due process claim, plaintiffs have failed to allege *facts* adequate to support a claim that the expulsion of the student-plaintiff for 17 school days for smoking marijuana on school grounds was either arbitrary, improper or unfair. *Cf. Petrey v. Flaugher*, 505 F.Supp. 1087 (E.D.Ky.1981). The Court cannot accept the invitation to consider the sufficiency of the evidence of "repentance and amendment," without disregarding the judicial strictures applicable in school discipline cases. *Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).

Count IV does not even *assert* that the placement of the student-plaintiff on "school probation" amounted to a deprivation of any constitutionally protected property or liberty interest, *see Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and, in light of the plaintiffs' failure even to identify the nature and consequences of "school probation," the Court would be ill-advised to consider what, if any, limitations either the United States Constitution or the Maine Constitution imposes upon the discretion of school officials to reinstate a student on a probationary basis. *See Rose v. Nashua Board of Education*, 679 F.2d 279 at 282 (1st Cir. 1982); *Herbert v. Ventetuolo*, 638 F.2d 5, 6 (1st Cir. 1981).

### F.  Conclusion

The First Circuit has expressed strong disapproval of "uninformative pleading[s] which, even under liberal notice standards, [are] on the very margin of what is tolerable." *DiPerri v. Federal Aviation Administration*, 671 F.2d 54, 59 n.4 (1st Cir. 1982). The complaint in this case contains few specific factual allegations and they do not support the conclusory constitutional claims asserted.[10]

---

**10.** Concerning the alleged liability of school board members for compensatory damages in the "specific context of school discipline," the Supreme Court has stated that such an award under section 1983

will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot be characterized as being in good faith.

*Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). The complaint alleges that the defendants acted "with intent to deprive [Boynton] of his constitutional rights and to cause other injury to [Boynton]." [Complaint, Ct. I, ¶ 30; Ct. II, ¶ 13.] But the recitation of "opprobrious epithets," without even "rudimentary facts to support" such a claim, *see Kadar Corp. v. Millbury*, 549 F.2d 230, 235–36 (1st Cir. 1977), is insufficient to support a claim for compensatory damages. Indeed, the facts alleged by the plaintiffs as to the duration of the suspension and expulsion and as to the notice and hearings which preced-

ed those actions indicate sufficient concern and adequate compliance with the requirements of procedural and substantive due process.

These observations pertain as well to plaintiffs' claim for *punitive* damages against the school officials and committee members individually. Punitive damages may be assessed where "a government official acts knowingly and maliciously to deprive others of their civil rights." *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267, 101 S.Ct. 2748, 2760, 69 L.Ed.2d 616 (1981). But bald assertions that the individual defendants acted with intent to violate the student-plaintiff's constitutional rights are legally insufficient in the face of an alleged chronology of events demonstrating otherwise. *Cf. McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979) [allegation of ultimate fact of retaliatory motive sufficient in *pro se* complaint where alleged chronology of events "may be read as providing some support for an inference of retaliation"].

Finally, plaintiffs' claim for punitive damages against the Board of Directors of School Ad-

The complaint must be and hereby is dismissed for failure to state a federal constitutional claim upon which relief can be granted.

SO ORDERED.

ministrative District 67 for the acts of the defendants in their *official* capacities is not maintainable. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981).