James Thomas **SALAZAR**, Plaintiff,

v.

**E.T. Lon LUTY, et al., Defendants.**

**Civ. A. No. H–86–4138.**

United States District Court,
S.D. Texas,
Houston Division.

April 16, 1991.

Mary L. Sinderson, Houston, Tex., for plaintiff.

Jeffrey J. Horner, Houston, Tex., for defendants.

## OPINION ON SUMMARY JUDGMENT

HUGHES, District Judge.

### 1. *Introduction.*

An off-duty police officer working for a Texas public school assisted in detecting a student's violation of the school's drug policy. The student was not prosecuted criminally, but he was disciplined by the school. The process afforded the student was constitutionally adequate. The student will take nothing by his suit.

### 2. *Parties.*

A. The plaintiff is James Salazar, who was a student at Pasadena Independent School District's South Houston High School.

B. The defendants are numerous trustees, administrators, and employees of the Pasadena Independent School District.

### 3. *Chronology, 1984.*

September 13: Carter (assistant principal) and Pierson (security guard) took Thomas Watson, a student, out of class and asked him about packages of marijuana that were found in his student locker. Watson said that he had bought it from James Salazar at school on September 10. Watson made a written statement.

September 19: Carter took Salazar out of his first class and brought him to his office. Carter, Pierson, and a Pasadena police officer, Will Kelly, interrogated Salazar for 30–40 minutes. After the interrogation, Carter suspended Salazar for violating the district's drug policy.

September 21: Barber (principal) gave Salazar a hearing. Salazar left the hearing when the decision was announced to refuse him readmittance. Later that day, Bondy (assistant superintendent) rescinded the suspension until Barber held a second hearing.

September 24: Salazar was readmitted to school at the Pasadena School's Community Guidance Center, a disciplinary facility used by the school district. His parents received notice that he was indefinitely suspended.

September 27: Barber held a second hearing. Salazar chose not to testify. Barber suspended Salazar for the rest of the year.

October 1: Salazar appealed.

October 2: Bondy overruled the suspension, and he instructed Barber to reassign Salazar to the Guidance Center for 60 days.

October 3: Barber and Carter sent Salazar's parents notice of the 60–day suspension. Salazar stopped attending school.

October 4: Salazar appealed the 60–day suspension to Meyer (superintendent), who affirmed it.

October 10 & 17: The school board held a hearing on Salazar. The board decreased the suspension to 30 days in the Guidance Center.

October 22: Salazar returned to regular classes. He was given credit for 30 days at the Guidance Center, under the two-for-one rule for good behavior; he spent three days on suspension and 12 days at the Guidance Center.

#### 4. *14th Amendment.*

In a public school's disciplinary proceeding, the United States Constitution requires that before a student may be suspended the school district must observe the procedural safeguards. The process that is due a student, at a minimum, is:

A. The student must be informed of the accusation against him;

B. The student must be informed of the factual basis for the charge; and

C. The student must have an opportunity to tell his side of the story to an official, who is not directly involved in the incident and who can dispassionately evaluate the proposed guilt and punishment. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

In this instance, Salazar had a prompt hearing, with the opportunity to appeal the decision at each level. Indeed, he took those opportunities. He had the chance to introduce witnesses and documents, examine witnesses, and argue. The district and the officials afforded Salazar all the process that he is due under the fourteenth amendment. Even though the district met its duty under the specifics of the court-adopted rule, a careful examination of the whole incident and the disciplinary response gives no sense of abuse of authority or phoney hearings. The requirement that the district, like all governments, carry out its responsibilities with procedural regularity was met.

#### 5. *Texas law.*

Under the Texas statutes, a student may not be denied the privileges of his home campus unless the board of trustees determines that the student's presence presents a continuing danger of physical harm to him or to others. Texas Education Act § 21.301 (1984). The standard for using the statute requires that:

A. The district's rule must be rationally related to the objective harm sought to be avoided;

B. The process for enforcing the rule must be adequately cross-checked with safeguards; and

C. Substantial evidence must support the decision of the school board.

The district's rule allowing suspension for selling drugs at school is rational because the presence of illegal drugs is manifestly a source of probable physical harm to students and staff. Even if the marijuana were arguably not intrinsically harmful, the behavior associated with blackmarket dealings in drugs is closely involved with physical harm. The school was not enforcing some silly hair length dispute.

The process is adequate because there were all of the hearings and verifications already discussed. It was also adequate in the sense that there was an effort by the school to limit the damage to Salazar while protecting the other students by isolating him in a "special" school facility. Some limited, temporary measure was needed until the board's permanent decision could be made. Also, substantial evidence supported both the initial administrative decision to discipline Salazar and the final board decision that Salazar violated the school drug policy.

#### 6. *State actors and other rights.*

This case involves a school disciplinary proceeding. It is not a criminal case. Criminal charges were never filed against Salazar. The presence of Jim Kelly, who was an off-duty city police officer, does not convert this education administration problem into a criminal prosecution. The effect of his presence and acts in a criminal case are not a question for this case.

Kelly was a state actor against whom all the constitutional restrictions on the use of governmental power apply. Although he was working a second job as a school security officer, he was hired because of his ability to use his governmental association as an additional weapon against the troubles he found at school. As a security agent of the public school, he would be a state actor in any event, even if he had come from Brinks.

Salazar claims the school violated his right to be free from:

A. Unreasonable searches and seizures under the fourth amendment to the United States Constitution;

B. Custodial interrogation and self-incrimination under the fifth amendment; and

C. The right to counsel under the sixth amendment.

Each of these rights applies almost only to criminal prosecutions, so there is no violation of the restrictions on the government in the proceeding at school.

### 7. *The Texas Constitution.*

The Texas Constitution guarantees rights independently of the protections to individuals afforded by the Federal Constitution. The Texas Constitution has a provision parallel to the due process clause. It is the law of the land clause, which is evocative of Magna Carta's *lex terre.* Although they have an independent source and independent content, Salazar's claims under the 4th, 5th, 6th, and 14th amendments are roughly analogous to his claims under the Texas Constitution's article I, sections 9, 10, and 19. Salazar's position implicates none of the protections under the Texas Constitution; he has no claims under the state's defense of liberty that he was the object of an abuse of governmental power.

### 8. *Conclusion.*

Salazar will take nothing from the district or from the people he sued. The district met its duty to Salazar with the full range of hearings to which he was entitled under the procedural regularity clauses of both the United States and Texas Constitutions.