*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0372p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

S.E., as Next Friend of A.E.; T.E., as Next Friend of
A.E.; A.E., a minor by and through her Next
Friends, S.E. and T.E.,

                  *Plaintiffs-Appellants,*

    *v.*

GRANT COUNTY BOARD OF EDUCATION; DONALD
MARTIN, in his Capacity as Superintendent and
Individually; RONALD LIVINGOOD, in his Capacity
as Principal of Grant County Middle School and
Individually; JAMES LACEY, in his Capacity as
Assistant Principal of Grant County Middle School
and Individually; CELISA EDMONDSON, in her
Capacity as Health Nurse of Grant County Middle
School and Individually,

                  *Defendants-Appellees.*

No. 07-6330

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 06-00124—William O. Bertelsman, District Judge.

Argued: September 15, 2008

Decided and Filed: October 10, 2008

Before: GUY, RYAN, and McKEAGUE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Kenneth J. Henry, PEDLEY & GORDINIER, Louisville, Kentucky, for Appellants. Suzanne Cassidy, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellees. **ON BRIEF:** Kenneth J. Henry, PEDLEY & GORDINIER, Louisville, Kentucky, for Appellants. Suzanne Cassidy, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellees.

_____

**OPINION**

_____

RALPH B. GUY, JR., Circuit Judge. Plaintiffs A.E. and her next friends assert state and federal claims against the Grant County Board of Education, Superintendent Donald Martin, Principal Ronald Livingood, Assistant Principal James Lacey, and Nurse Celisa Edmondson, stemming from the actions of school officials in response to seventh-grader A.E.'s sharing of prescription medicine with fellow student S.W. Plaintiffs appeal from the district court's grant of qualified immunity to the individual defendants and its entry of summary judgment for the School District. We affirm.

**I**.

Both plaintiffs and defendants adopt the statement of facts in the district court's opinion on summary judgment.

A.E., the subject Plaintiff in this lawsuit, was a seventh-grade student at Grant County Middle School in May of 2006. A.E. is bi-polar and suffers from Attention Deficit Hyperactivity Disorder (ADHD). To manage these conditions, she takes Adderall. During the 2004-2005 school year, A.E. received the medication daily at lunchtime. Pursuant to school policies and procedures, A.E.'s medication was maintained in the school nurse's office, where she went each day to receive it.

On May 26, 2005, the last day of school, A.E. went to the nurse's office for her lunchtime administration of Adderall, as she had done for the entire school year. At that time, there were four Adderall tablets left. The school nurse, defendant Edmondson, returned the remaining four tablets to A.E. in the original container. A.E. requested to return at the end of the school day to pick up the remaining tablets rather than take them to class with her. The nurse told A.E. to take the remaining medicine with her, even though it was the middle of the school day, and advised A.E. not to give any of the tablets to anyone else.

A.E. had nowhere to keep the medication because she no longer had access to her locker and had neither a purse nor a backpack. Therefore, she gave the medication to her teacher, Mrs. Moore, for safekeeping. The students left the classroom at that time to engage in outside activities. When they returned to the classroom, the teacher returned the medicine to A.E. The students then went to their last class of the day, where there was a different teacher, Ms. Babel. Ms. Babel showed a movie and served refreshments. Ms. Babel was in and out of the classroom during the movie.

It was during this class that another student, S.W., noticed A.E.'s medication container and asked what was in it. S.W. asked for one of the pills. At first, A.E. refused. After continued pressure, however, A.E. relented and gave S.W. one of her Adderall pills.

Approximately two days later, the Assistant Principal, Defendant James Lacey, called T.E. (A.E.'s mother) and asked if she was aware of the events. She responded that A.E. had told her about them when she came home from school that day. Assistant Principal Lacey then informed T.E. that a deputy sheriff would be coming to interview A.E. about this incident over the summer break. However, T.E. was never contacted by law enforcement over the summer.

School resumed on August 11, 2005, and A.E. returned to Grant County Middle School to begin her eighth-grade year. On the first day of school, Assistant Principal Lacey (a Defendant here in his individual capacity) called A.E. to his office and asked her about what happened on the last day of school, May 26, 2005. He was aware at this time that a sheriff's deputy had not contacted A.E. over the summer break.

Assistant Principal Lacey asked A.E. if she remembered the events of the last day of school and required her to write a statement, which she was then required to date and sign. Thereafter, A.E. was sent back to class. Plaintiff claims that she was not informed that she was free to leave the office or that her written statement would be turned over to the police for purposes of charging her with criminal activity. A copy of the statement was not placed in A.E.'s school file.

Approximately one week after Assistant Principal Lacey met with A.E., he called both A.E. and S.W. to his office. He asked them what had happened on May 26, 2005. A.E. remained silent during this meeting. Assistant Principal Lacey then issued each girl a one-day suspension and told them they would be subject to a six-month probation through the juvenile justice system. This second meeting was held after A.E. had submitted the written statement that was later given to Officer Osborne.

A.E. and her mother were contacted by a court-designated worker (CDW) and notified of a meeting at juvenile court to be held on October 3, 2005. At that time, A.E. was given the option to enter into a diversion agreement or face formal court proceedings. A.E. chose the diversion program. The record does not detail who was present at the meeting or who presented the options to A.E.

*S.E. v. Grant County Bd. of Educ.*, 522 F. Supp. 2d 826, 827-28 (E.D. Ky. 2007).

Defendants add in their brief on appeal that Assistant Principal Lacey obtained a written statement from each of the students, A.E. and S.W., and suspended the students from school for a day. The students were referred to the school Resource Officer, Sheriff's Deputy Rita Osborne, who made the determination to consult with a Grant County Juvenile Court Designated Worker (CDW). Ultimately, A.E. was charged in juvenile court with a trafficking violation that was diverted and dismissed after A.E. satisfied her diversion contract. No charges were brought against S.W.

A.E. and her next friends filed suit in the United States District Court for the Eastern District of Kentucky in June 2006, claiming that the events described above caused A.E. to suffer severe emotional distress and associated physical problems. The fifteen-count complaint alleged a variety of 42 U.S.C. § 1983 claims under federal statutes and the U.S. Constitution, as well as claims under state law. Prior to the district court's ruling on summary judgment, plaintiffs agreed to the dismissal of eight counts in the complaint, which left counts of disability discrimination under § 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count III), violations of the Fourth and Fifth Amendments (Counts IV and V), related conspiracy and refusal to prevent counts (Counts VI and IX), and state law claims of negligence (Count X) and negligent supervision (Count XII).

Following oral argument on the parties' cross motions for summary judgment in August 2007, the district court entered a summary order finding, without reasoning, that "all defendants sued in their individual capacities are entitled to qualified immunity."[1] The court allowed certain

---

[1] Although the order did not contain reasoning, we note that the court suggested it would rule this way during oral argument on the motions.

supplemental briefing, and entered its Opinion and Order in October 2007, granting the defendant's motion for summary judgment and denying the plaintiffs' motion for partial summary judgment. The court noted the voluntary dismissal of eight counts by agreement of the parties; dismissed Counts IV, V, VI, and IX "upon the doctrine of *Heck v. Humphrey*," dismissed Count III for plaintiffs' failure to exhaust administrative remedies; and dismissed the state law counts of X and XII without prejudice. This timely appeal followed.

**II**.

The district court's entry of summary judgment is reviewed *de novo*. *Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 486 (6th Cir. 2005). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A district court's decision on the question of qualified immunity is also reviewed *de novo*. *Thomas v. Cohen*, 304 F.3d 563, 568 (6th Cir. 2002).

**A.**     ***Heck v. Humphrey***

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that:

> . . . in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id*. at 486-87 (footnote omitted). The requirement that the conviction or sentence has been reversed, expunged, or invalidated is analogous to the similar requirement in the tort of malicious prosecution and is called the "favorable termination" requirement of *Heck*. This ensures that habeas corpus remains the exclusive remedy for criminal defendants who have not obtained a favorable termination in their criminal proceedings and does not allow duplicative, collateral attack of convictions or sentences through § 1983 actions. *See Shamaeizadeh v. Cunigan*, 182 F.3d 391, 394-95 (6th Cir. 1999).

Plaintiffs' first claim on appeal challenges the district court's determination that *Heck* barred their 42 U.S.C. § 1983 Fourth and Fifth Amendment claims, emphasizing that A.E. was neither convicted nor sentenced and that *Heck* is thus inapplicable.

The district court specifically found that the unpublished decision of this court in *Morris v. City of Detroit*, 211 F. App'x 409 (6th Cir. 2006) was "controlling." In *Morris*, the juvenile plaintiff was sentenced to probation, then later brought a § 1983 action claiming that his investigation had produced a coerced confession. This court found that "a challenge to a criminal investigation that led to a conviction necessarily challenges the validity of the conviction, and therefore falls within the *Heck* framework." Id. at 411 (citation omitted). We note that in *Morris*, the plaintiff had been sentenced, unlike in the instant case.

The district court also examined *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005), where the Third Circuit found that the § 1983 claims of a plaintiff who had accepted pretrial diversion were barred by *Heck*. The district court quoted the reasoning in *Gilles*:

> When a criminal defendant is selected for and decides to participate in [a pretrial diversion] program, he avoids trial and potential jail time, and receives expungement of the record in exchange for successfully completing a probationary period. . . .
>
>         . . . .
>
> [The *Heck* doctrine is] equally applicable in this context. [The plaintiff's] underlying disorderly conduct charge and his § 1983 First Amendment claim require answering the same question—whether [plaintiff's] behavior constituted protected activity or disorderly conduct. If [the diversion program] does not constitute a favorable termination, success in the § 1983 claim would result in parallel litigation over whether [plaintiff's] activity constituted disorderly conduct and could result in a conflicting resolution arising from the same conduct.

*Id.* at 209. The *Gilles* decision relied on analogous cases in the Second and Fifth Circuits.[2] In accordance with those cases, the district court found that there was no material difference between the diversion entered into by plaintiff, which it deemed was not a favorable termination, and a conviction resulting in probation. The district court ended this section of its opinion by stating a policy concern noted in many *Heck*-related decisions: "[t]his court also agrees with the authorities holding that it would constitute poor public policy to permit a criminal defendant to obtain lenient treatment by submitting to a benevolent program of this kind and then turn around and sue the arresting officer."

The district court also considered a decision from the Eastern District of Kentucky, where the court found that plaintiff's Fourth Amendment challenge to her arrest was barred under *Heck* by her agreement to pretrial diversion. *Everage v. Whitaker*, No. 05-CV-115-KKC, 2006 WL 782744 (E.D. Ky. Mar. 27, 2006) (unpublished disposition). *See also Cissell v. Hanover Ins. Co.*, 647 F. Supp. 757, 758 (E.D. Ky. 1986). In contrast, in the case of *Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 537 (W.D. Ky. 2005), cited by plaintiffs, the court found that whether or not the plaintiff's pretrial diversion agreement constituted a "favorable termination," there had been no criminal conviction and her rights to bring suit under § 1983 were not barred by *Heck* (the court also noted that the nature of the plaintiff's claims would not have "impugn[ed] the validity of a conviction, even if she had a conviction").

Plaintiffs convincingly assert that *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592, 603 (6th Cir. 2007)[3], *cert. denied*, __ S. Ct. __, 77 U.S.L.W. 3019 (U.S. Oct. 6, 2008) (No. 07-1318), supports their position that *Heck* poses no bar to the instant suit, because A.E. was never in custody, was not convicted or sentenced, and was never eligible for habeas corpus relief. Accordingly, they argue she was improperly prohibited from "seek[ing] vindication of her federal rights."

The *Powers* plaintiff was convicted and fined for a misdemeanor reckless-driving offense, and subsequently violated his probation when he could not pay the fine. His probation was revoked, and he was required to serve the original 30-day sentence. He later brought a federal class action lawsuit against the Public Defender Commission for its alleged unconstitutional practice of failing to request indigency hearings on the ability to pay for indigent clients. Because the plaintiff's incarceration was less than 30 days, and impossible to challenge via habeas corpus, we joined with

---

[2] *See Taylor v. Gregg*, 36 F.3d 453, 455-56 (5th Cir. 1994); *Roesch v. Otarola*, 980 F.2d 850, 853 (2d. Cir. 1992); *Singleton v. City of New York*, 632 F.2d 185, 193-95 (2d Cir. 1980).

[3] *Powers*, decided August 2007, was not discussed in the district court's opinion issued the following October.

four additional circuits in "holding that the favorable-termination requirement poses no impediment to Powers's § 1983 claims."[4] *Id.*

In *Powers*, we considered the case of *Spencer v. Kemna*, 523 U.S. 1, 21 (1998), where a majority of the Court held that the plaintiff maintained the right to bring a § 1983 action despite the dismissal of his habeas petition as moot because his period of incarceration was over. We found that *Spencer* demonstrated that the *Heck* bar to § 1983 litigation did not require a favorable termination of the criminal proceedings for plaintiffs who were not eligible to make habeas petitions. We announced our disagreement with First, Third, Fifth, and Eighth Circuit determinations, including the *Gilles* case, that in spite of the *Spencer* decision, § 1983 claimants who were not eligible for habeas relief remained bound by *Heck*'s favorable termination requirement.

As stated in *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005),

> *Heck* bars § 1983 plaintiffs from advancing claims that, if successful, would necessarily imply the invalidity of a prior conviction or sentence. However, if the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed.

*Id.* at 682. (Internal quotation marks and citation omitted.) Given the facts of this case, where the plaintiff was neither convicted nor sentenced and was habeas-ineligible, we hold that *Heck* is inapplicable, and poses no bar to plaintiffs' claims.

## B.        Qualified Immunity/Constitutional Violations

In their argument to the district court on summary judgment, defendants asserted that Assistant Principal Lacey did not violate the Fourth or Fifth Amendments. These arguments were not addressed by the district court. As noted above, following oral argument, the district court entered a brief order granting all of the individual defendants qualified immunity. In its later Opinion and Order on the motion for summary judgment, where it found that *Heck* required dismissal of Counts IV, V, VI, and IX, the court specifically "expresse[d] no opinion on whether the Assistant Principal was acting as an agent of the police to the degree that he was required to administer *Miranda* warnings to the minor plaintiff or on the Fourth Amendment claims."

We may consider an alternative ground for granting summary judgment to defendants, if it is "fairly presented by the record, as long as the opposing party 'is not denied an opportunity to respond to the new theory.'" *Graoch Assocs. #33, L.P. v. Louisville/Jefferson County Metro Human Relations Comm'n*, 508 F.3d 366, 371 (6th Cir. 2007) (citing *Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir. 1981)). As defendants note, the arguments that constitutional violations did not occur were included in their summary judgment pleadings, and plaintiffs addressed the arguments at that juncture and in their briefs on appeal.

We agree with defendants that Lacey's actions did not constitute violations of either the Fourth or Fifth Amendments. Although plaintiffs contend that A.E. was improperly "seized" on August 11, 2005, for the sole purpose of "coercing" her confession to be used in juvenile court proceedings, this is not borne out by the record.

---

[4] The *Powers* court also held that "Powers is exempt [from *Heck*'s favorable-termination requirement] for a second reason." The second reason was because Powers was alleging the violation of his constitutional rights due to improper *procedures*, which could not impact his conviction for reckless driving.

Both parties have cited to the landmark case of *New Jersey v. T.L.O.*, 469 U.S. 325 (1985), where the Supreme Court recognized that public school students' rights under the Fourth Amendment are not as broad as those of the public. *T.L.O.* dealt with the search of a student's possessions for cigarettes, which led to the school official's discovery of marijuana. The Supreme Court found the search was proper, stating that "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *Id*. at 341. Plaintiffs point to the distinction drawn in *T.L.O.* between a search "carried out by school authorities acting alone," and those done "in conjunction with or at the behest of law enforcement," *Id*. at n.7 (citing *Picha v. Wielgos*, 410 Fed. Supp. 1214, 1219-21 (N.D. Ill. 1976)), and assert that Lacey was acting in conjunction with law enforcement in taking the actions he did.

Plaintiffs argue that "Lacey acted in conjunction with or at the behest of police within the meaning of *T.L.O.* and *Picha*." They point to the facts that Lacey reported the incident to law enforcement (as required by Kentucky statute[5] and Grant County Board of Education Policy) and that Lacey took A.E.'s statement or confession "because he knew that Officer Osborne had not interviewed A.E. over the course of the summer after the events of May 26, 2005 had occurred."[6] Plaintiffs also emphasize that the "confession" elicited by Lacey was never placed in A.E.'s school file, but was only taken for purposes of prosecution, and that A.E.'s suspension did not occur until at least a week after the "confession." Their position is that Lacey took the statement in lieu of and in conjunction with law enforcement, implying that Lacey (1) believed less stringent standards applied to his actions than those of law enforcement officers, and (2) had the goal of making an end-run around A.E.'s constitutional rights.

Defendants quote from Deputy Osborne's deposition testimony concerning school officials' collection of statements from students:

> Q:      But your statement was that you have the principals collect statements for you and then you take them and run with --
>
> A:      Well, they don't collect them for me. They collect them for their school things, and then I take the copies of the statement and do the criminal end.

Lacey testified at deposition that he did not talk to Deputy Osborne prior to collecting the students' statements. Defendants have cited to numerous federal and state court decisions holding that the sharing of the results of rule violation investigations with law enforcement did not make the school officials agents of law enforcement.[7] Defendants' position is that the plaintiffs' evidence does not create a question of material fact that constitutional violations occurred.

"[A] school official may detain a student if there is a reasonable basis for believing that the pupil has violated the law or a school rule." *Wofford v. Evans*, 390 F.3d 318, 326 (4th Cir. 2004).

---

[5] See Ky. Rev. Stats. §§ 158.154 and 158.155. Section 155(8) provides for immunity from civil or criminal liability for school officials' reporting of proscribed behavior.

[6] Lacey testified at deposition that Officer Osborne had a medical condition during that summer break that prevented her from interviewing A.E.

[7] *See Illinois v. Pankhurst*, 848 N.E.2d 628, 636 (Ill. App. 2006)*; G.C. v. Bristol Twp. Sch. Dist.*, No. 05-4800, 2006 WL 2345939 at *2 (E.D. Pa. Aug. 11, 2006) (unpublished disposition); *J.D. v. Commonwealth.*, 591 S.E.2d 721, 725 (Va. App. 2004); *New Hampshire v. Nemser*, 807 A.2d 1289, 1292 (N.H. 2002); *In re Harold S.*, 731 A.2d 265, 267 (R.I. 1999); *In the Matter of: Krystal Nicole Phillips*, 497 S.E.2d 292, 294 (N.C. App. 1998); *New Hampshire v. Tinkham*, 719 A.2d 580, 583 (N.H. 1998); *In the Matter of Appeal in Navajo County Juvenile*, 901 P.2d 1247, 1249 (Ariz. App. 1995); *Jarmon v. Batory*, No. 94-0284, 1994 WL 313063, at *11 (E.D. Pa. June 29, 1994) (unpublished disposition); *Com. v. Snyder*, 597 N.E.2d 531-532 (Mass. 1992).

There is no dispute that such a violation occurred here. That detention must be "'reasonably related in scope to the circumstances which justified [it] in the first place.'" *Id*. at 326-27 (citing *T.L.O.*, 469 U.S. at 341) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). Each case, and the reasonableness of the actions taken by school officials, turns on its particular facts. Here, we find that (1) plaintiffs have not produced sufficient evidence to support the claim that Lacey was acting at the behest of law enforcement when he asked plaintiff S.E. to write a statement, or her "side of the story," concerning the events of May 26, 2005; and (2) the detention was otherwise reasonable.

In this case, a school's assistant principal was contacted by the parent of a student regarding another student's violation of school rules on the final day of the school year. Weeks later, school was again in session, and nothing had been done over the summer break to redress that violation. Summoning the girls to his office to take their respective information about what transpired the previous May, particularly in light of the fact that Officer Osborne had been sick and had not performed the task, does not rise to the level of a Fourth Amendment violation in our view.

Concerning plaintiffs' Fifth Amendment claim, plaintiffs contend that Lacey conducted his August 2005 meeting with A.E. as an "agent of the Grant County Sheriff's Office." Given our findings above, we conclude that Lacey's actions did not violate the Fifth Amendment, as under the circumstances—where Lacey was not acting at the behest of law enforcement, law enforcement officers were not present, and we have found Lacey's actions under the circumstances to be reasonable—we agree that he was not required to advise A.E. of her *Miranda* rights. *See*, *e.g.*, *Jarmon v. Batory*, No. 94-0284, 1994 WL 313063 (E.D. Pa. June 29, 1994) (unpublished disposition) (citing *Salazar v. Luty*, 761 F. Supp. 45, 47 (S.D. Tex. 1991); *Pollnow v. Glennon*, 594 F. Supp. 220, 224 (S.D.N.Y. 1984), *aff'd*, 757 F.2d 496 (2d Cir. 1985); and *Boynton v. Casey*, 543 F. Supp. 995, 997 & n.4 (D.Me.1982)).[8]

The district court will be affirmed on this basis as to Counts IV, V, VI, and IX.

## C.    Section 504 Plan

The Rehabilitation Act provides in § 504 that

> [n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). When a claim under this statute involves public education, we must consider a provision in the Individuals with Disabilities Education Act (IDEA). The IDEA states that, before bringing claims under other statutes (specifically listing the Rehabilitation Act) seeking "relief that is also available under this subchapter," the administrative procedures in § 1415 must be exhausted to the same extent "had the action been brought under this subchapter." 20 U.S.C. § 1415(l). That language refers to Subchapter II of Chapter 33 of the IDEA, a detailed provision setting forth procedures to be established by state educational agencies that receive federal assistance, "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a).

Plaintiffs' § 504 claim states that although defendants developed a "504 plan" for A.E. under 45 C.F.R. § 84.33(b)(1) and (2), they "routinely, consistently, and purposefully failed to implement

---

[8] Given that this finding disposes of all of the constitutional claims, we need not discuss the arguments concerning qualified immunity. Additionally, absent any individual liability, the school board was also properly granted summary judgment.

the components of the plan."   The claim further asserts that A.E. was improperly denied a due process hearing prior to being subjected to a "change" in her educational placement.

Although plaintiffs generally do not dispute the statute's pre-suit exhaustion requirement, they argue that the district court's dismissal of the claim on this basis was improper under the circumstances of this case.  They cite to *Covington v. Knox County School System*, 205 F.3d 912, 917 (6th Cir. 2000) (holding that only monetary damages could make plaintiff whole for due process violations, where exhaustion would be futile because student had already graduated), and *Joseph M. v. Northeastern Educational Intermediate Unit 19*, 516 F. Supp. 2d 424, 438 (M.D. Pa. 2007) (finding exhaustion requirement futile where plaintiffs requested relief that was unavailable through IDEA administrative process, and IDEA eligibility was not in issue), for the proposition that exhaustion of administrative remedies is not required when it would be futile.  They assert it would be futile here, where plaintiff A.E. is now home-schooled.[9]

While plaintiffs rely on *Covington* in making their argument *against* exhaustion, our reasoning in that case also lends support to the argument *for* exhaustion:

> We disagree that the plaintiff's damages claim alone excuses her from exhausting her administrative remedies.  Although the Sixth Circuit has not decided the question, most courts have held that a plaintiff seeking money damages is required to exhaust administrative remedies under the IDEA, even if money damages are not available under the IDEA or through the administrative process.

*Covington*, 205 F.3d at 916.  Likewise, in *Robb v. Bethel School District # 403*, 308 F.3d 1047 (9th Cir. 2002), the Ninth Circuit held that "when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required."  *Id.* at 1048.

Considering whether the administrative process could address this plaintiff's alleged injuries, we note that plaintiffs' § 504 Plan claim requests

> entry of an Order from this Court requiring Defendant Grant County Board of Education to provide A.E. *with a compensatory education program sufficient to remediate A.E.'s academic deficiencies*, an award of her costs expended herein plus a reasonable attorney fee.

(Emphasis added.)  The reasoning of *Robb* applies with equal force to this case.  The remediation of A.E.'s academic deficiencies, requested in plaintiffs' complaint, is initially best addressed by educational professionals through the administrative process.  A.E.'s claim will require an assessment of whether the actions complained of here improperly excluded her from or denied her the benefits of the education to which she was entitled, or subjected her to improper discrimination on account of her disability.  Unlike the plaintiff in *Covington*, A.E. has not yet graduated, and in fact a part of her claim specifically requests a "compensatory education program."  Although plaintiffs' futility argument has some appeal, we find that the issues raised by this litigation are best first addressed by the comprehensive administrative process Congress put in place for resolution of differences in the educational setting.  Said process may have in-kind services and resources

---

[9] As defendants contend, "parents may not avoid the state administrative process through the unilateral act of removing their child from a public school."  *Covington*, 205 F.3d at 918 (internal quotation marks and citation omitted). *See also Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989) (finding parents' decision to send student to private school does not excuse failure to exhaust administrative remedies).

available to it for assistance of students such as A.E. who have been aggrieved in some way by the system.[10]

As defendants point out, "[i]f the administrative review procedures available to A.E.'s family had been utilized, the court below would have had a factual record to weigh in deciding whether or not the Plan had been implemented." Should the district court revisit this issue, a developed record would assist it in making its determination. The district court correctly dismissed this claim without prejudice.[11]

**AFFIRMED**.

---

[10] As aptly stated by the First Circuit:

> In the administrative state, exhaustion of administrative remedies is generally required. This requirement is more than a matter of form. Insisting on exhaustion forces parties to take administrative proceedings seriously, allows administrative agencies an opportunity to correct their own errors, and potentially avoids the need for judicial involvement altogether.

*P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100, 104 (1st Cir. 1997) (internal quotation marks and citation omitted). *See also Charlie F., by Neil F. v. Bd. of Educ.*, 98 F.3d 989 (7th Cir. 1996).

[11] The nature of plaintiff's § 504 claim is not crystal clear. Plaintiffs' Count III allegations could be construed as stating a claim not based simply on defendants' general failure to implement the § 504 educational plan, but stemming more particularly from the consequences of the juvenile proceedings brought against A.E. Plaintiffs allege A.E. was discriminated against because of her disability in violation of § 504 in that defendants caused the juvenile proceedings to be brought: (1) without affording her a due process hearing even though the juvenile proceedings effected a change in her educational placement; and (2) without considering whether the behavior that triggered the proceedings was caused by A.E.'s attention deficit or bipolar disorder. Considering the § 504 claim in light of these allegations, it is questionable whether relief would be available under the IDEA and whether exhaustion of administrative remedies would serve any useful purpose. Under such circumstances, exhaustion of administrative remedies would not be prerequisite to private enforcement of § 504 of the Rehabilitation Act. *See Gean v. Hattaway*, 330 F.3d 758, 773-75 (6th Cir. 2003) (affirming dismissal of IDEA claims, but allowing § 504 claim to proceed).

Yet, even if the § 504 claim were construed in this manner, we would still be constrained to uphold summary judgment for lack of evidence that *defendants* "caused the juvenile proceedings to be instituted." The record is clear that defendants are responsible only for turning over A.E.'s written statement to Officer Osborne. It was Officer Osborne, in concert with the juvenile court designated worker and County Attorney, who decided to formally charge A.E. Hence, *even if* the juvenile proceedings somehow resulted in a violation of A.E.'s rights under the Rehabilitation Act, there appears to be no evidence that the defendants named in this action should be held liable for the violation.