NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0342n.06

No. 17-6209

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 12, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| SOPHIE G., *a minor child, by and through her parent and next friend,* and KELLY G., | ) | |
|  | ) | |
|  | ) | |
| Plaintiffs-Appellants, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
|  | ) | |
| v. | ) | |
|  | ) | |
| WILSON COUNTY SCHOOLS, | ) | |
|  | ) | |
| Defendant-Appellee. | ) | |

BEFORE: SILER, COOK, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellee Wilson County Schools offers a subsidized after-school childcare program called "Kid's Club." Plaintiff-Appellant Kelly G. sought to enroll her seven-year-old daughter, Plaintiff-Appellant Sophie G., in Kid's Club but was denied access because Sophie was not toilet trained. Plaintiffs brought suit under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, and the district court dismissed the complaint because it found Plaintiffs failed to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA"). We **REVERSE**.

I.

Sophie G. attends Tuckers Crossroads Elementary School in Wilson County, Tennessee. Kelly is employed full time and requires childcare for Sophie, both during the school year and during school breaks. Sophie has autism and developmental delay, which impairs her functional communication, sensory responses, movements, mannerisms, and social adaptation. Sophie is not fully toilet trained and needs a one-on-one attendant to assist with diapering.

Sophie receives special education services from Wilson County Schools. As a student receiving special education, Sophie's educational services are delivered under an Individualized Education Plan ("IEP") uniquely designed for her disability by an "IEP Team" made up of her mother, teachers, and Wilson County administrators. Sophie's IEP addresses, among other things, social skills and toilet-independence training, including "donning [and] doffing" of clothes. [IEP, R.31-1 at PID 169, 171, 176].

Wilson County offers an extended-day childcare program (sometimes referred to as "after-school") known as "Kid's Club." Kid's Club is a registered childcare provider licensed under the laws of the State of Tennessee. Kid's Club, which has existed in Wilson County for approximately 25 years, operates at Tuckers Crossroads Elementary and eleven other locations in the Wilson County School District. Kid's Club programs utilize public facilities and funds in addition to receiving enrollment fees from parents.

Kelly sought to enroll Sophie in Kid's Club, which is less expensive than nonsubsidized after-school care. In September 2016, one of Sophie's classroom aides spoke with the Kid's Club on-site coordinator on Kelly's behalf to determine whether Sophie could attend the program. Kelly was told Sophie could not attend Kid's Club because she was not toilet trained. On October 11, 2016, Kelly inquired again about enrolling Sophie in Kid's Club, but was again told that Sophie could not attend because she was not "potty trained." Kelly continued seeking to enroll Sophie in Kids Club by calling the school district's Department of Exceptional Children and was told on October 20 and October 25 that "the program's rules barred Sophie's participation." Additionally, the School Board's Superintendent, Dr. Donna Wright, witnessed one of Sophie's diaper changes and determined that Sophie "squirmed" or was otherwise difficult to change.

II.

In November 2016, Kelly authorized a due process complaint on Sophie's behalf in the Tennessee Department of Education pursuant to 34 C.F.R. § 300.500, *et seq*. and Tenn. Comp. R. & Regs. § 520-01-09-.18, *et seq*., asserting that Sophie's IEP provided insufficient "speech/language service," "Occupational Therapy," and "Behavioral Therapy"; did not provide support services for specific educational goals listed in the IEP; and that the services listed did not adequately support the associated educational goals. The complaint further alleged Wilson County violated the IDEA by failing to "design and implement an appropriate IEP" for the years 2014-2017, "fully and thoroughly evaluate/assess Sophie," or design appropriate services to assist Sophie.

The "History" section of Sophie's due process complaint also outlined her rejection from Kid's Club: "In the IEP, Wilson County determined that 'S. will have every opportunity to participate in extracurricular and nonacademic activities that she qualifies for.['] Despite saying so, S. is denied access to the Tucker Crossroads Elementary School afterschool program because of her disability." [Due Process Compl., R.21-2 at PID 283–84] (listing Kelly's attempts to enroll Sophie in the program). This section concluded that "Wilson County Schools does not understand S., her support needs nor her present levels of functioning." [*Id.* at PID 284].

For "Relief," the complaint requested that Wilson County further evaluate Sophie, develop and implement an appropriate IEP, alter the IEP to include staff supports, and provide certain therapies. The complaint did not request Kid's Club admittance.

On April 12, 2017, an administrative judge entered a "Final Order Entered By Consent" ordering the due process complaint dismissed without prejudice as a result of the parties' settlement. The parties agreed that they had "resolved that substantive part of the Petitioner's complaint for due process seeking relief for educational benefits under the IDEA." [Final Consent

Order, R.21-3 at PID 107]. The order noted that the parties could not "reach agreement on resolution of the Petitioner's claims related to the Respondent's after-school program. Those claims are voluntarily dismissed without prejudice." [*Id.*].

Shortly thereafter, Plaintiffs filed this suit under the ADA and the Rehabilitation Act alleging that Wilson County intentionally discriminated against Sophie when it denied her access to the Kid's Club program on the basis of her lack of independent toileting ability. Plaintiffs' complaint sought relief in the form of damages, attorney's fees, and an injunction requiring Wilson County to comply with the accessibility requirements under relevant law.

Wilson County moved to dismiss on the basis that Plaintiffs failed to properly exhaust their administrative remedies. The district court agreed and granted the motion. Plaintiffs timely appealed.

III.

We review de novo the district court's dismissal under Fed. R. Civ. P. 12(b)(6). *Nelson v. Miller*, 170 F.3d 641, 649 (6th Cir. 1999) (citation omitted). "A court should not dismiss a plaintiff's complaint under Rule 12(b)(6) unless, after construing the complaint in the light most favorable to the plaintiff and accepting all factual allegations as true, the court determines that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (citing *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

A.

The IDEA ensures that children with disabilities receive necessary special-education services and provides administrative remedies to achieve that goal. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009); *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). The IDEA offers federal funds to states in exchange for a commitment to furnish a "free

appropriate public education" (a "FAPE") to all children with certain physical or intellectual disabilities. 20 U.S.C. §§ 1412(a)(1)(A), 1401(3)(A)(i) (listing covered disabilities). As defined in the IDEA, a FAPE comprises "special education and related services"—both "instruction" tailored to meet a child's needs and "supportive services" sufficient to permit the child to benefit from that instruction. *Id.* at § 1401.

Under the IDEA, an IEP serves as the "primary vehicle" for providing each child with the promised FAPE. *Honig v. Doe*, 484 U.S. 305, 311 (1988). A student's IEP outlines a personalized plan to meet all of the child's educational needs, documents the student's current "levels of academic achievement," specifies "measurable annual goals" for how she can "make progress in the general education curriculum," and lists the "special education and related services" to be provided so that she can "advance appropriately toward [those] goals." 20 U.S.C. § 1414(d).

The IDEA establishes formal procedures for resolving disputes. A parent or guardian may file a complaint regarding any matter concerning the provision of a FAPE with the local or state educational agency. *Id.* at § 1415(b)(6). That pleading triggers a "[p]reliminary meeting" involving "the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint." *Id.* at § 1415(f)(1)(B)(i). If the issue is not resolved, the matter proceeds to a "due process hearing" before an impartial hearing officer. § 1415(f)(1)(A). Any decision of the officer granting substantive relief must be "based on a determination of whether the child received a [FAPE]." *Id.* at § 1415(f)(3)(E)(i). If the hearing is initially conducted at the local level, the ruling is appealable to the state agency. *Id.* at § 1415(g). Finally, any party unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court. *Id.* at § 1415(i)(2)(A).

Section 1415(*l*) of the IDEA addresses the Act's relationship with other statutory remedies and contains an exhaustion requirement:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

29 U.S.C. § 1415(*l*).

### B.

"[T]he ADA and Rehabilitation Act cover largely the same ground." *R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cty., Ky.*, 637 F. App'x 922, 924 (6th Cir. 2016). The Rehabilitation Act § 504 provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a). Similarly, Title II of the ADA forbids any "public entity" from discriminating based on disability. 42 U.S.C. § 12131 *et seq*. This statute provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

*Id.* at § 12132. ADA regulations require that a public entity "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R.

§ 35.130(b)(7). Individuals may seek monetary damages or injunctive relief for violations of Title II.

The Supreme Court recently addressed the relationship between the IDEA and federal discrimination statutes. In *Fry v. Napoleon Community Schools*, the plaintiffs' daughter, E.F., suffered from cerebral palsy and was prescribed a service dog to assist her with everyday tasks. 788 F.3d 622, 624 (6th Cir. 2015). E.F.'s school, which provided her with a human aide as part of her IEP under the IDEA, refused to permit her to bring the service dog to school. The plaintiffs sued the school, its principal, and the school district, alleging violations of the ADA, the Rehabilitation Act, and state disability law. The district court granted the defendants' motion to dismiss on the grounds that because the claims related to E.F.'s education and therefore necessarily implicated E.F.'s IEP, the IDEA's exhaustion provision required the plaintiffs to exhaust IDEA administrative procedures before bringing suit under the ADA and Rehabilitation Act. This court affirmed, finding that because plaintiffs "could have used IDEA procedures" to remedy the issue, they "must exhaust IDEA procedures if they seek 'relief that is also available' under IDEA, even if they do not include IDEA claims in their complaint." *Id.* at 625.

The Supreme Court reversed:

> [Section] § 1415(*l*)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(*l*) merely by bringing her suit under a statute other than the IDEA. . . . Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises. But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required.

*Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754 (2017). The Court also provided guidance for analyzing whether a plaintiff seeks relief for the denial of a FAPE:

What matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading.

That inquiry makes central the plaintiff's own claims, as § 1415(*l*) explicitly requires. . . . In effect, § 1415(*l*) treats the plaintiff as "the master of the claim": She identifies its remedial basis—and is subject to exhaustion or not based on that choice. A court deciding whether § 1415(*l*) applies must therefore examine whether a plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education. . . .

One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 755–56 (internal citations omitted).

IV.

Looking to the gravamen of Plaintiffs' complaint—the violations alleged and relief sought—admission to the Kid's Club is distinct from Sophie's education, is not alleged to be necessary for Sophie to receive a FAPE, and is, at most, tangentially related to Sophie's IEP. A FAPE includes instruction specially designed to meet the unique needs of a child with a disability. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1000 (2017) (citation omitted). "The IEP provisions reflect . . . that, for most children, a FAPE will involve integration in the regular classroom and individualized special education calculated to achieve advancement from grade to grade." *Id.* Here, admission to an after-school childcare program is not required for

Sophie to receive educational benefits at school, and nothing in Plaintiffs' complaint alleges

admission to the Kid's Club is required for her education. *See Fry*, 137 S. Ct. at 758 ("The Frys'

complaint alleges only disability-based discrimination, without making any reference to the

adequacy of the special education services E.F.'s school provided.").[1]

Wilson County argues that the claim seeks relief for denial of a FAPE because Sophie's

IEP addresses her toileting needs, including "improved independence with donning/doffing [lower

extremity] clothing for toileting." [IEP, R.31-1 at PID 176]. The district court agreed with this

argument because "when a plaintiff has alleged injuries that could be redressed to any degree by

the IDEA's administrative procedures and remedies, exhaustion of those remedies is required."

[*Id.*] (quoting *S.E. v. Grant Cty. Bd. of Educ.*, 544 F.3d 633, 642–43 (6th Cir. 2008)).

This analysis runs contrary to § 1415(*l*) and *Fry*. Under § 1415(*l*), courts must consider

the substance of the plaintiff's own claims. "The statutory language asks whether a lawsuit in fact

'seeks' relief available under the IDEA—not, as a stricter exhaustion statute might, whether the

suit 'could have sought' relief available under the IDEA (or, what is much the same, whether any

remedies 'are' available under that law)." *Fry*, 137 S. Ct. at 755. This is further evinced by the

facts of *Fry*, where the parties seemed to agree that E.F.'s claims could have been redressed by the

IDEA's administrative procedures and remedies. But that was not dispositive because "nothing in

the nature of the Frys' suit suggests any implicit focus on the adequacy of E.F.'s education." *Id.*

at 758. Similarly, Plaintiffs addressed Sophie's educational concerns in her administrative

---

[1] *See also AP ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F. Supp. 2d 1125, 1152 (D. Minn. 2008) ("In this case, however, AP's claims relate to the Adventures Plus day-care program, and not to his education . . . . And even if Adventures Plus could be considered the equivalent of kindergarten, the Court would not treat his ADA and § 504 claims as IDEA-type claims because, as explained already, AP's claims relate only tangentially to his education. Accordingly, AP was not required to exhaust [] administrative remedies.").

complaint, and now seek equal admission of disabled, non-toilet-trained students to Wilson County's after-school care program, separate and apart from her, or any other student's, IEP.

The district court determined Plaintiffs' complaint was subject to the IDEA's exhaustion requirement by relying on the hypothetical "clues" posited in *Fry*, reasoning that Plaintiffs could not sue "a library or theater based on its refusal to provide personal assistants to help with toileting needs. Nor is it likely that an adult could successfully sue a school that refused to help with bathroom needs . . ." [R.38 at PID 212–13, 216].

But *Fry*'s clues will not always assist courts. *See Fry*, 137 S. Ct. at 759 (Alito, J., concurring) ("These clues make sense only if there is no overlap between the relief available under [the IDEA and other federal laws]. The Court does not show or even claim that there is no such overlap—to the contrary, it observes that '[t]he same conduct might violate' the ADA, the Rehabilitation Act and the IDEA. And since these clues work only in the absence of overlap, I would not suggest them."). *See also J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 986 (11th Cir. 2017) ("The cause of action here does not fit neatly into *Fry*'s hypotheticals. . . . Although this claim could be brought as a FAPE violation for failure to follow J.S.' IEP, we conclude that it is also cognizable as a separate claim for intentional discrimination under the ADA and § 504.").

Plaintiffs' complaint does not fit neatly into *Fry*'s hypotheticals because some claims apply only to children, including access to childcare. Here, asking whether Plaintiffs could sue a theater under the ADA or § 504 based on its refusal to provide toileting assistance does not assist the court. The more pertinent question is whether essentially the same claim could be brought against

another public childcare provider. Without reaching the merits of that hypothetical claim,[2] there are circumstances under which such a claim would survive. For example, if a public facility admitted non-toilet-trained children under a certain age but refused to accommodate older children requiring diapering, that may violate the ADA or § 504. Or if a public facility provided toileting or diapering assistance to a non-disabled child who had an accident or was young enough to need occasional help, then the facility may have an obligation under the ADA and § 504 to provide disabled children a similar accommodation.

The district court also relied on the fact that Plaintiffs initially "included the Kid's Club claim in the administrative Due Process Complaint and that they voluntarily dismissed the claim." [R.38 at PID 216]. The *Fry* court suggested that, on remand, the court should consider whether parents, before filing suit under the ADA or the Rehabilitation Act, began to pursue but then abandoned the IDEA's formal procedures because "a plaintiff's initial pursuit of the IDEA's administrative remedies can serve as evidence that the gravamen of her later suit is the denial of a FAPE, even though that does not appear on the face of her complaint." *Fry*, 137 S. Ct. at 758.[3]

---

[2] The parties disagree on whether Tennessee law requires licensed childcare providers to provide diapering services to older children requiring assistance because of a disability. *See* Tenn. Comp. R. & Regs. § 1240-04-03.10(14)(f)(1) ("If older children are enrolled who lack independent toileting abilities, rules regarding diapering of preschool children shall apply."). Wilson County alleges Kid's Club accepts no student that requires diapering. Plaintiffs contend that, with discovery, it may be the case that Kid's Club occasionally provides diapering services, and note that the school superintendent denied Sophie's request for admission after observing her, which may indicate some children requiring diapering are admitted so long as they don't "squirm." In that case, the ADA may require diapering as long as the diapering did not impose unreasonable burdens, as would be true for any public facility offering childcare services. In any event, the merits of the claim are not before the panel.

[3] *But see Fry*, 137 S. Ct. at 759 (Alito, J., concurring) ("This clue also seems to me to be ill-advised. It is easy to imagine circumstances under which parents might start down the IDEA road and then change course and file an action under the ADA or the Rehabilitation Act that seeks relief that the IDEA cannot provide. The parents might be advised by their attorney that the relief they were seeking under the IDEA is not available under that law but is available under another.

However, Sophie's administrative due process complaint did not seek admission to the Kid's Club as a remedy, nor did Plaintiffs allege Sophie's exclusion violated the IDEA. The due process complaint described various therapies and aids Sophie sought to benefit her educational development. [R.21-2 at PID 286]. The Final Order Entered By Consent sets forth agreed changes to Sophie's IEP and then states:

> The Parties agreed that under the terms of the IEP, the parties have satisfactorily resolved that substantive part of the Petitioner's complaint for due process seeking relief for educational benefits under the IDEA.

> The Parties cannot reach agreement on resolution of the Petitioner's claims related to the Respondent's after-school program. Those claims are voluntarily dismissed without prejudice at the instance of the Petitioner.

[R.21-3 at PID 107]. This language suggests that the Kid's Club dispute was regarded as separate from the request for educational benefits under the IDEA.

The gravamen of Plaintiffs' complaint seeks access to subsidized childcare on equal terms, and not redress for the denial of a FAPE. Neither *Fry*'s clues nor the administrative proceedings suggest otherwise. Therefore, the district court erred in finding Plaintiffs were required to exhaust administrative remedies under the IDEA.

V.

For the foregoing reasons, we **REVERSE** the district court's dismissal and **REMAND** for further proceedings consistent with this opinion.

---

Or the parents might change their minds about the relief that they want, give up on the relief that the IDEA can provide, and turn to another statute. Although the Court provides these clues for the purpose of assisting the lower courts, I am afraid that they may have the opposite effect. They are likely to confuse and lead courts astray.").